## Barco Auto Leasing Corporation *v.* Veota House, Sr., et al.
## (12655)

Peters, C. J., Healey, Shea, Dannehy and Callahan, Js.

Argued November 5, 1986—decision released January 20, 1987

*John C. Driscoll,* with whom, on the brief, were *Jackson T. King, Jr.,* and *Mary E. Holzworth,* for the appellant (plaintiff).

*David M. Lesser,* with whom, on the brief, was *John C. Wirzbicki,* for the appellees (defendants).

PETERS, C. J. The principal issue on this appeal is whether the trial court properly calculated the amount of damages to which the defendants were entitled upon rescission of an instalment sales contract under the Retail Instalment Sales Financing Act (hereinafter RISFA), General Statutes §§ 42-83 through 42-100a. This action was brought by the plaintiff, Barco Auto Leasing Corporation (hereinafter Barco), against the defendants, Veota House, Sr., and Charles House, to recover a deficiency under an alleged leasing agreement for the rental of an automobile. The defendants responded by filing an answer and several counterclaims. After a disciplinary nonsuit against the plaintiff, and a subsequent judgment by the trial court, *Hurley, J.,* for the defendants on their counterclaims, the plaintiff filed a motion to open the nonsuit and the judgment against it. The trial court, *Santaniello, J.,* granted that motion in part, issuing an order opening

the judgment as to damages only. After a further hearing on the issue of damages before the trial court, *Schaller, J.*, the defendants recovered damages of $9596.76, attorney's fees of $5000 and costs from the plaintiff. From this judgment, the plaintiff has appealed to this court. We find error only with regard to the award of attorney's fees.

The record reveals the following facts. On or about October 11, 1979, the defendants entered into an alleged leasing agreement with the plaintiff to lease a 1979 Audi 5000 automobile for a three year period.[1] Attached to the agreement was a rider stipulating that the defendants-lessees were required to purchase the automobile at the end of the lease term for $5500. After driving the automobile for approximately twenty-six months, the defendant Charles House voluntarily surrendered the automobile to the plaintiff on December 31, 1981.

In July, 1982, the plaintiff brought this action against the defendants to recover a deficiency under the agreement and the defendants counterclaimed for damages on several different theories. On February 7, 1983, the trial court, *Hendel, J.*, entered a judgment of nonsuit against the plaintiff for its failure to comply with a discovery order. The case proceeded to trial before the court, *Hurley, J.*, on the defendants' counterclaims, although the plaintiff, allegedly because of lack of notice, did not appear at that trial.

In rendering judgment for the defendants, the trial court ruled separately on several of their counterclaims. The court determined that the defendants were entitled to recover under their first counterclaim because the

---

[1] According to testimony presented at trial, the car actually belonged to and was driven by Charles House. Because Barco had determined that Charles House had insufficient credit to enter into the agreement, it required his father, Veota House, Sr., to cosign the agreement.

alleged leasing agreement was in fact a contract of sale, and violated § 42-83 (3) (d) of RISFA,[2] a provision intended to protect buyers from unknowingly assuming excessive financing charges. On this counterclaim, the court also decided that the defendants were entitled to rescind the contract and to recover as damages the $9596.76 they had paid the plaintiff. With respect to the defendants' counterclaim under the Connecticut Unfair Trade Practices Act (hereinafter CUTPA); General Statutes §§ 42-110a through 42-110q; the court found that the plaintiff had violated RISFA and had engaged in a variety of unfair and deceptive practices: in disguising a contract of sale as a lease; in disguising a finance charge as a lease payment charge; in failing to disclose the number, amount and due dates of payments for which the defendants were obligated; in scheduling a final "balloon payment" that was more than ten times the amount of the regular instalment payments; in failing to disclose the total amount of the defendants' advance payment, total payments, requirements to purchase, costs of registration, mileage charges, late fees, termination rights, and deficiency liability; and in charging a total price of $19,626 that far exceeded the purchase price of the vehicle. On this counterclaim, the court awarded the defendants punitive damages of $19,193.52, twice their actual damages. In addition, the court awarded the defendants $4000 in attorney's fees.

In February, 1984, the plaintiff filed a motion to open both the judgment of nonsuit and the judgment hold-

---

[2] RISFA § 42-83 (3) (d) provides: "Definitions. In this chapter, unless the context or subject matter otherwise requires . . . (d) 'Retail instalment sale' means any sale evidenced by a retail instalment contract or instalment loan contract wherein a retail buyer buys goods from a retail seller at a time sale price payable in two or more instalments. The cash price of the goods, the amount, if any, included for other itemized charges which are included in the amount of the credit extended but which are not part of the finance charge under chapter 657 and the finance charge shall together constitute the time sale price."

ing the plaintiff liable for damages, on the grounds that the plaintiff had not been advised that its attorney had withdrawn his appearance after the entry of the disciplinary nonsuit and that it had not received notice of the subsequent trial on the defendants' counterclaims. On June 4, 1984, the trial court, *Santaniello, J.,* denied the motion to open the judgment of nonsuit and granted the motion to open the trial court's judgment as to the issue of damages only. That ruling meant that the judgment rendered against the plaintiff on the issue of liability remained in effect for the purpose of any subsequent proceedings. No appeal from that ruling has been filed, nor has the plaintiff claimed that ruling as error in its present appeal to this court.

On September 20, 1984, the trial court, *Schaller, J.,* retried the case solely on the issue of damages. In a decision dated December 5, 1984, the court affirmed the findings of fact made by Judge Hurley regarding the numerous violations of RISFA committed by the plaintiff. It also upheld his decision to rescind the contract between the parties. In order to return the parties to their respective positions prior to the contract, as required under the principles of rescission, the court awarded the defendants a full refund of the amount they had paid under their contract with Barco, $9596.76. In awarding that refund, the court denied the plaintiff's request for a credit against that amount for the fair rental value of the automobile while it was in the defendants' possession. The court also awarded the defendants the sum of $5000 as reasonable attorney's fees pursuant to CUTPA. The trial court declined, however, to award the defendants punitive damages in light of "evidence that misstatements by Charles House were a major contributing factor to, if not the producing cause of, the violations involved."[3]

---

[3] Relying on CUTPA, Judge Hurley had awarded the defendants punitive damages of $19,193.52, which was twice the amount of their actual damages. See *Bailey Employment Systems* v. *Hahn,* 545 F. Sup. 62, 73 (D.

On appeal, the plaintiff claims that: (1) the judgment rendered by the trial court, *Hurley, J.,* was void for lack of notice; (2) the rulings rendered by the trial court, *Hurley, J.,* were not binding in the hearing held by the trial court, *Schaller, J.;* (3) the trial court's award of damages to the defendants should have been offset by a credit for the fair rental value of the automobile while it was in the defendants' possession; and (4) the trial court's award of attorney's fees to the defendants lacked the necessary evidentiary foundation. We find error only on the last of these claims.

I

We may usefully consider the plaintiff's first two claims of error jointly, since each addresses the validity and the effect of the proceedings held before the trial court, *Hurley, J.* Neither of these claims is properly before this court. Their merits were addressed both at that trial and in the subsequent proceedings before Judge Santaniello. The plaintiff has failed to furnish us with a transcript of either of those proceedings; *Barra* v. *Ridgefield Card & Gift Gallery, Ltd.,* 194 Conn. 400, 407, 480 A.2d 552 (1984); see *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713–14, 462 A.2d 1037 (1983); *DeMilo* v. *West Haven,* 189 Conn. 671, 680–81, 458 A.2d 362 (1983); see Practice Book § 4019 (a) (formerly § 3018); and, even more significantly, has not appealed from, or claimed as error, the ruling by Judge Santaniello denying the plaintiff's motion to open Judge Hurley's judgment on the merits and limiting a subsequent rehearing to the issue of damages. *Roque* v. *Warden,* 181 Conn. 85, 86–87 n.2, 434 A.2d 348 (1980); *State* v. *Anonymous,* 179 Conn. 155, 158, 425 A.2d 939 (1979); *Gould* v. *Rosenfeld,* 178 Conn. 503, 505, 423 A.2d 146 (1979); see Practice Book § 4185

Conn. 1982). The defendants' CUTPA counterclaim is not an issue here because the defendants have not appealed from the judgment of the trial court, *Schaller, J.,* denying them punitive damages.

(formerly § 3063). It is elemental that the plaintiff cannot complain indirectly of rulings that it has not appealed directly. The record in the hearing on damages before Judge Schaller unequivocally demonstrates that, at that time, the plaintiff acquiesced in the ruling by Judge Santaniello and conceded that it was precluded from relitigating its substantive liability. Judge Schaller's memorandum of decision expressly notes that "at Barco's request, the judgment was opened as to damages only" and that "the parties agree that they are bound by Judge Hurley's judgment ordering rescission of the contract." In the absence of a record demonstrating that these claims concerning the trial court's ruling on the issue of liability were properly preserved at trial, and are properly reviewable here, we decline to consider them further. *State* v. *Tirado,* 194 Conn. 89, 92, 478 A.2d 606 (1984); *Chaplin* v. *Balkus,* 189 Conn. 445, 448, 456 A.2d 286 (1983); *State* v. *Chairamonte,* 189 Conn. 61, 64, 454 A.2d 272 (1983); *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 398, 449 A.2d 1026 (1982).

## II

In addressing the plaintiff's third claim of error, we are bound by the established substantive allegations of the defendants' counterclaims described in the memorandum of decision of the trial court, *Hurley, J.* The only issue before us is whether, given these substantive findings, the trial court, *Schaller, J.,* erred in its calculation of the rescissory damages to be awarded to the defendants. In particular, the question is whether, in light of the plaintiff's established and significant violations of RISFA and CUTPA, the plaintiff is entitled to a credit for the use value of the automobile for the twenty-six month period the defendants drove the car prior to returning it to Barco.

We begin our discussion of this issue by clarifying what is not contested in this appeal. There is no claim

that the automobile in question was defective; the car apparently was returned to the plaintiff because the defendants could no longer afford to maintain it. There is also no longer any viable claim that the defendants were not consumer buyers, or that the transaction at issue was not a consumer transaction subject to the provisions of RISFA.[4] Finally, there is no question that the defendants are entitled to rescission of the contract as an implied remedy under RISFA. *Keyes* v. *Brown,* 155 Conn. 469, 474–75, 232 A.2d 486 (1967). Although *Keyes* recognized the buyer's implied right of rescission, it did not consider the present claim that such a right may be subject to an offset for the fair rental value of the goods used by the rescinding buyer prior to their return to the seller.

Under Connecticut law, as a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible. *Keyes* v. *Brown,* supra, 476; *Mandeville* v. *Jacobson,* 122 Conn. 429, 433, 189 A. 596 (1937); see *Duksa* v. *Middletown,* 192 Conn. 191, 197, 472 A.2d 1 (1984). In restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller. See 1 G. Palmer, Law of Restitution (1978) § 4.6, pp. 424–25. In this case, the defendants voluntarily returned the automobile to the plaintiff in December, 1981. Accordingly, the court ordered the plaintiff to refund the sum of $9596.76, representing the amounts paid by the defendants from October, 1979, to December, 1981. The plaintiff contends on appeal, however, that it is entitled to a credit against that amount for the fair rental value of the car for the twenty-six months that the defendants retained possession of it.

[4] The provisions of RISFA do not expressly provide the retail buyer with specific remedies. *Keyes* v. *Brown,* 155 Conn. 469, 475, 232 A.2d 486 (1967).

Nothing in the provisions of RISFA expressly addresses the measure of the remedy in rescission that RISFA affords to a consumer buyer injured by a seller's noncompliance with its requirements. We may assume, however, that the draftsmen of RISFA intended to provide, for consumer buyers, remedies that would supplement the rights they already enjoyed as ordinary buyers of goods. It is therefore useful, by way of analogy, to inquire into the remedies that the Uniform Commercial Code (hereinafter UCC); General Statutes § 42a-1-101 et seq.; offers to a buyer who is injured by a seller's defective performance of a contract for the sale of goods. This court has previously looked to the UCC for general guidance on remedies. *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 224–25, 455 A.2d 857 (1983); *Hamm* v. *Taylor,* 180 Conn. 491, 494–95, 429 A.2d 946 (1980). The UCC remedies for a buyer injured by a substantial nonconformity in contract goods can therefore furnish a model by which to adjudge the proper remedy for a buyer injured by substantial noncompliance with the contract requirements of RISFA.

The UCC authorizes a buyer of goods who "rightfully rejects or justifiably revokes acceptance," because of the seller's breach, to recover *"so much of the price as has been paid."*(Emphasis added.) General Statutes § 42a-2-711 (1); General Statutes § 42a-2-608; *Plateq Corporation* v. *Machlett Laboratories, Inc.,* 189 Conn. 433, 440–41, 456 A.2d 786 (1983); *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 13–14, 441 A.2d 43 (1981); *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 565, 438 A.2d 759 (1980). That section does not expressly permit the defaulting seller to claim an offset for the buyer's use of the defective goods. By contrast, in a buyer's restitution action to recover payments made, where the buyer is himself in default, the UCC does afford a seller the right to an offset for "the amount or value of any bene-

fits received by the buyer directly or indirectly by reason of the contract." General Statutes § 42a-2-718 (3). Had the UCC draftsmen contemplated a general rule of offset in circumstances where a buyer exercises his right to revoke acceptance because of a seller's breach, they would have expressly set forth such a rule as they did in § 42a-2-718 (3). "It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation." *Galvin* v. *Freedom of Information Commission*, 201 Conn. 448, 456, 518 A.2d 64 (1986); *Shelby Mutual Ins. Co.* v. *Della Ghelfa*, 200 Conn. 630, 637, 513 A.2d 52 (1986). These UCC provisions, read in conjunction, envision a rule that requires a seller to return the buyer's purchase price in toto when he has delivered nonconforming goods under circumstances that afford a buyer a right to reject or to revoke acceptance.[5]

---

[5] We recognize that there are some cases and commentaries that have broadly suggested that the seller's right to an offset coexists with the UCC's remedial provisions for the buyer's right to a refund of the purchase price. Several of these cases, however, are readily distinguishable from the instant case because they involve the buyer's use of contract goods after he had exercised his right to revoke acceptance under § 2-608 of the UCC. *Mobile Home Sales Management, Inc.* v. *Brown*, 115 Ariz. 11, 19, 562 P.2d 1378 (1977); *Stroh* v. *American Recreation & Mobile Home Corporation*, 35 Colo. App. 196, 202, 530 P.2d 989 (1974); *Lawrence* v. *Modern Mobile Homes, Inc.*, 562 S.W.2d 729, 732–33 (Mo. App. 1978); *Jorgensen* v. *Pressnall*, 274 Or. 285, 292, 545 P.2d 1382 (1976). No such facts pertain to this case. The remainder of these cases are likewise distinguishable because they do not appear to have taken into account the provisions of UCC § 2-718 (3), a significant factor in our analysis here. *Orange Motors of Coral Gables, Inc.*, v. *Dade County Dairies, Inc.*, 258 So.2d 319, 321 (Fla. App. 1972); *Pavesi* v. *Ford Motor Co.*, 155 N.J. Super. 373, 379, 382 A.2d 954 (1978); *Moore* v. *Howard Pontiac-American, Inc.*, 492 S.W.2d 227, 230 (Tenn. App. 1973); see also *Computerized Radiological Services, Inc.* v. *Syntex Corporation*, 595 F. Sup. 1495, 1511 (E.D.N.Y. 1984), aff'd in part, rev'd in part, 786 F.2d 72 (2d Cir. 1986); *American Container Corporation* v. *Hanley Trucking Corporation*, 111 N.J. Super. 322, 334–35, 268 A.2d 313 (1970); *Gawlick* v. *American Builders Supply, Inc.*, 86 N.M. 77, 79, 519 P.2d 313 (1974). To the extent that these cases purport to use an equitable balancing test,

*Stridiron* v. *I.C., Inc.,* 578 F. Sup. 997, 1003 (D. Virgin Islands 1984); *Sanborn* v. *Aranosian,* 119 N.H. 969, 970, 409 A.2d 1352 (1979). Only in very special circumstances, such as those contemplated by General Statutes § 42a-2-718 (3), do principles of equity compel a different result. See General Statutes § 42a-1-103.

The question before us, in light of this statutory pattern under the UCC, is how to construe the buyer's right to rescission under RISFA. We note that RISFA itself imposes no conditions upon the buyer's right to the return of moneys paid, which is the remedy ordinarily associated with rescission. RISFA was adopted "to protect retail buyers of goods from unknowingly assuming excessive charges by requiring that all charges and terms be fully set forth by the retail seller before the contract is signed by the buyer." *Keyes* v. *Brown,* supra, 473–74. The buyer's remedy must therefore be implemented in a fashion that will take full account of a governing statute that was purposefully designed to correct the often gross imbalance in bargaining power between a retail seller and a retail buyer. *Shirley* v. *State National Bank of Connecticut,* 493 F.2d 739, 742 n.3 (2d Cir. 1974). Since RISFA is a remedial statute, we must construe it liberally in order to implement its consumer protection policies. *Borzencki* v. *Estate of Stakum,* 195 Conn. 368, 383, 489 A.2d 341 (1985); *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 756, 474 A.2d 776 (1984); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 520, 461 A.2d 938 (1983).

---

rather than a per se rule, in determining whether the seller is entitled to an offset, we agree that certain circumstances may compel the award of such an offset to the seller. See, e.g., *Stroh* v. *American Recreation & Mobile Home Corporation,* supra; *Lawrence* v. *Modern Mobile Homes, Inc.,* supra; *Pavesi* v. *Ford Motor Co.,* supra; *Moore* v. *Howard Pontiac-American, Inc.,* supra; W. Hawkland, Uniform Commercial Code Series (Sup. 1986) § 2-608:04, p. 91; J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) p. 317; J. Phillips, "Revocation of Acceptance and the Consumer Buyer," 75 Com. L.J. 354, 357 (1970).

Against this background, we must determine whether Barco is entitled to offset the rental value of the use of the car against the full refund of the purchase price awarded to the defendants. There is no dispute that the defendants derived a benefit from the use of the car. During the twenty-six months the car was in their possession, the defendants drove it approximately 65,000 miles and apparently were satisfied with its performance.[6] There is equally no longer any dispute that the defendants used this car pursuant to a contract that contained multiple and material violations of RISFA. The rulings by Judges Hurley and Santaniello on the issue of liability definitively concluded that the transaction was a consumer transaction and that RISFA applied to this sale.

We acknowledge that the plaintiff, in reliance on the defendants' representations concerning their intended use of the car,[7] may have inadvertently mischaracterized the transaction as a commercial transaction, and that the RISFA violations committed by the plaintiff followed logically from this mischaracterization. The evidence of the extent of the misrepresentations is murky at best because of the plaintiff's failure properly to present such evidence in the trial court in the hearings held by Judges Hurley and Santaniello. To the extent that the representations were relevant to the finding of liability under RISFA, they are not properly before this court. To the extent that they are residually relevant to the issue of damages, however, the

[6] According to testimony introduced by the plaintiff at trial, the fair rental value for such a car was approximately $475 per month on a two year basis. There was additional testimony that the defendants would have incurred an excess mileage charge of approximately $150 per month, resulting in an estimated fair rental value of $625 per month.

[7] Prior to entering into the agreement with Barco, Charles House indicated to a Barco representative that he intended to use the car for business purposes. He subsequently changed his mind and decided that the car would be for personal use. The record fails to indicate whether House expressly notified Barco of this change in circumstances.

plaintiff has been given consideration for these representations because Judge Schaller fully took those representations into account in denying the defendants an award of punitive damages. Furthermore, we conclude that, consistent with the policies of RISFA, the seller bears the ultimate responsibility for the proper characterization of the transaction.[8] We reiterate that Judge Schaller found that no matter how justified the plaintiff may have been in relying on these representations, the plaintiff was not entitled to an offset against the refund of the purchase price awarded to the defendants. We therefore decline to consider the defendants' representations as a factor in our determination of whether the seller is entitled to an offset under RISFA.

Although the plaintiff's violations of RISFA may have been inadvertent, our primary responsibility is to implement the remedial purpose of RISFA, which seeks to furnish a consumer buyer with all the information needed to make an informed choice about whether to enter into a particular transaction. In this case, this crucial information clearly was not made available to the defendants. As Judge Hurley found, there was a long list of terms that the plaintiff failed to disclose in the contract between the parties. For example, the defendants' decision to enter into this instalment sales contract was not informed by knowledge of such critical details as the number, amount and due dates of payments for which they were obligated, their termination rights and deficiency liability, or the fact that the total price that they were being charged far exceeded the purchase price of the car. All these factors, if known,

---

[8] We note, by way of analogy, that an infant who enters into a contract is, as a general rule, entitled to void that contract upon reaching majority, regardless of any misrepresentations of age made by the infant. See 1 Restatement (Second), Contracts (1981) § 14, comment c, p. 40; S. Williston, Contracts (3d Ed. 1959) § 245, p. 63. A consumer buyer is arguably similarly entitled to rescind a contract under RISFA, regardless of any misrepresentations he may have made to the seller.

might have dissuaded them from entering into the contract or at least might have prompted them to seek negotiation of more favorable terms. This transaction, therefore, was marked by the very imbalance in bargaining power between buyer and seller which RISFA is meant to rectify.

In these circumstances, we conclude that RISFA must be construed to afford to buyers like the defendants, who were injured by the plaintiff's failure to comply with the requirements of RISFA, no less protection than the UCC provides for buyers who are injured by a seller's delivery of defective goods. The defendants decided to rescind their purchase because the contract of sale proved to be too economically burdensome. RISFA is meant to provide protection to consumer buyers against precisely this type of substantial economic miscalculation. The defendants' delay, therefore, like a delayed response to a substantial latent defect in nonconforming goods, is no reason to diminish their right to recover the full purchase price. The facts of this case do not entitle the plaintiff to the offset it seeks.

Even if we were to read the policies of RISFA as permitting the consideration of equitable principles of restitution in appropriate circumstances, we would find no such redeeming circumstances in this case.[9] Despite the fact that the defendants benefited from their use of the car, the plaintiff was not left with an inequitable loss. The plaintiff managed to resell the car at wholesale value for approximately $6600 and conceded that it could have sold the car for as much as $8100 at retail value. Furthermore, the plaintiff has realized an additional benefit from its use of the $9596.76 paid by the defendants from October, 1979 to December,

[9] Because the plaintiff is the party that seeks the offset, it bears the burden of proving that it is entitled to such an award under applicable principles of equity. See, e.g., *Lopinto* v. *Haines,* 185 Conn. 527, 535, 441 A.2d 151 (1981); *Bronson & Townsend Co.* v. *Battistoni,* 167 Conn. 321, 326, 355 A.2d 299 (1974).

1981. Just as the trial court did not credit the plaintiff for the use value of the car, it likewise did not credit the defendants for the use value of that money.[10] Although we cannot ascertain the precise value of that benefit on the basis of the record before us, in our view the plaintiff's gain from use of that money, coupled with the revenue it received from the sale of the car, has adequately compensated the plaintiff for any financial loss it may have suffered. We conclude, therefore, that the equities in this case weigh in favor of the defendants and compel us to deny the plaintiff an offset for the value of the use of the car.

### III

In its final claim of error, the plaintiff contests the trial court's award of attorney's fees on the ground that the defendants are not legally entitled to such an award. Alternatively, the plaintiff argues that, even if such an award is justified, there was insufficient evidence presented at trial to calculate reasonable attorney's fees. We agree with the plaintiff's alternate claim of error.

As set forth above, the trial court determined that the plaintiff violated CUTPA by engaging in a number of unfair and deceptive trade practices and by making numerous deceptive statements to the defendants. Since CUTPA expressly permits the court to award "costs and reasonable attorneys' fees based on the work reasonably performed by an attorney"; General Statutes § 42-110g (d); the defendants are clearly entitled to such fees.

We agree with the plaintiff, however, that the defendants failed to present sufficient evidence at trial to

---

[10] As one commentator has pointed out, even in those circumstances where the seller is arguably entitled to an offset, giving "the seller an offset against the price for the benefit conferred on the buyer in using the goods is unfair" unless the buyer is also given "a credit for the benefit the seller has realized from the use of the money he has been paid by the buyer." W. Hawkland, Uniform Commercial Code Series (Sup. 1986) § 2-608:04, p. 91.

satisfy the "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing." *Hartford Electric Light Co.* v. *Tucker,* 183 Conn. 85, 91, 438 A.2d 828 (1981); *Bizzoco* v. *Chinitz,* 193 Conn. 304, 310, 476 A.2d 572 (1984); *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 680, 443 A.2d 486 (1982); see *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 568, 438 A.2d 759 (1980). In support of the claim for a statutory award of attorney's fees, the defendants' attorney submitted two affidavits, his own and that of a New York attorney who had worked on the case, detailing the time they spent on the case, the tasks they performed, and the fees they charged. The plaintiff's counsel objected to the admission of one of the affidavits on hearsay grounds and also argued that expert testimony was required to determine the value of reasonable attorney's fees. The court overruled this objection and admitted the affidavits, not as evidence, but only to include them in the file. The court then advised the parties to address any claim for attorney's fees in their briefs to the court. The parties, therefore, were given no opportunity to address this issue at trial. On this record, we conclude that the plaintiff was denied the undisputed right to litigate fully the reasonableness of the attorney's fees sought by the defendants' counsel. *Appliances, Inc.* v. *Yost,* supra, 681. This issue needs to be fully addressed at a further hearing.

There is error, the judgment of the trial court is set aside with respect to the award of attorney's fees and the case is remanded for further proceedings on that issue.

In this opinion HEALEY, DANNEHY and CALLAHAN, Js., concurred.

SHEA, J., dissenting in part. Although I agree with part I and part III of the majority opinion, I disagree

with part II, which effectively imposes a penalty on the plaintiff, unrelated to any loss suffered by the defendants, for a nonwilful violation of the Retail Instalment Sales Financing Act, General Statutes §§ 42-83 through 42-100a (RISFA), contrary to the evident legislative intent to afford only the remedy of rescission for such violations, as this court implicitly held in *Keyes* v. *Brown,* 155 Conn. 469, 476, 232 A.2d 486 (1967).

This backhanded award of punitive damages, which the trial court, *Schaller, J.,* denied after finding that misstatements of the defendants "were a major contributing factor to, if not the producing cause of, the violations involved," is achieved by permitting the defendants to receive the payments they made without any allowance for the benefits they received from the transaction. The value of these benefits, based upon the defendants' use of the car for a twenty-six month period at a reasonable rental value of $625 per month, according to testimony not rejected by the trial court, was $16,150.[1] The majority opinion approves the action of the trial court in making no allowance in its decree of rescission for this substantial benefit that the defendants have retained, thus ignoring the principle that he who seeks equity must first do equity. "It is the general rule that, where one seeks the advantage of a rescission of a contract . . . he should not be permitted to retain the consideration received by him." *Beckwith* v. *Cowles,* 85 Conn. 567, 570–71, 83 A. 1113 (1912). We have expressly held this equitable doctrine applicable to a rescission pursuant to RISFA. *Keyes* v. *Brown,* supra. "As a condition precedent to a rescission, the [buyers] were required to allege and prove that they had restored or offered to restore [the seller] to its former condition as nearly as possible." Id.

In order to justify the lopsided rescission ordered by the trial court, the majority opinion reaches beyond

---

[1] See footnote 6 of the majority opinion.

RISFA to article 2 of the Uniform Commercial Code, General Statutes § 42a-2-101 et seq. (UCC) relating to sales, which does not by its terms apply to statutory defects in retail instalment documents. See General Statutes § 42a-2-102. Though resort to analogous statutory principles may sometimes be useful, the practice is wholly inappropriate here because (1) the result is to create an additional punitive sanction for a violation of RISFA never contemplated by the legislature, and (2) the UCC provisions imported into RISFA are inappropriate when applied to nonconformities in contract documents rather than in goods sold, to which those statutes are addressed.

RISFA expressly provides, as a civil penalty for a "wilful violation" of any of its requirements, only that the owner or holder of the retail instalment contract shall be barred from "recovery of any finance, delinquency or collection charge." General Statutes § 42-99. This limited forfeiture may be imposed only where "such owner or holder approved of or had knowledge of such violation and after such approval or knowledge retained the benefits, proceeds, profits or advantages accruing from such violation or otherwise ratified such violation." General Statutes § 42-99. The trial court's finding that these RISFA violations occurred because one of the defendants told the plaintiff "he was purchasing the vehicle for business use, not for consumer use" and that he "signed a document to that effect" would have precluded even the limited forfeiture of finance charges authorized for a wilful violation. It is incongruous, therefore, that the majority opinion imposes for this plainly nonwilful violation a harsher penalty, forfeiture of any compensation for use of the automobile for more than two years, ignoring the standard requirement of equity that a reasonable allowance be made for benefits received by the rescinding party. By effectively modifying the rescission remedy for RISFA vio-

lations, contrary to our holding in *Keyes* v. *Brown,* supra, that restoration of benefits is essential, the majority opinion has fashioned a sanction going far beyond the civil and criminal penalties[2] authorized by the legislature.

The majority opinion has selected General Statutes §§ 42a-2-608 and 42a-2-711 as the UCC provisions to be employed in justifying a rescission that omits the normal offset, dictated by equitable principles, for benefits received by the buyer. Section 42a-2-608 (1) relates to a buyer who has revoked his acceptance of a product "whose nonconformity substantially impairs its value to him." There is no evidence in this case that the nonconformity of the retail installment contract documents to RISFA in any manner reduced the value of the benefits the defendants have derived from the transaction. Where there has been a substantial nonconformity of goods, the buyer does not ordinarily receive the same practical benefit from their use as he bargained for. It is at least arguable, therefore, that an offset for benefits received is unnecessary because the buyer's use of the defective goods prior to rescission was not sufficiently beneficial to warrant any allowance. Deficiencies in contract documents, however, cannot be said to have a like effect upon the benefits a buyer receives from use of the item purchased.

Section 42a-2-608 (2) also requires a "revocation of acceptance" to "occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." Leaving aside the question of whether the defendants should have discovered the RISFA violations more promptly, it can hardly be argued that their

---

[2] In addition to the civil penalties of General Statutes § 42-99, for a "wilful violation," General Statutes § 42-100 provides criminal penalties for those "who wilfully and deliberately" fail to comply with or violate RISFA.

use of the automobile for 65,000 miles over a two year period did not effectuate a "substantial change" in its condition. "Perhaps because they did not contemplate long use followed by rejection or revocation, the drafters included no provision in article 2 to deal with the seller's right to an offset for the buyer's use of the goods before such rejection or revocation." J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) p. 317. As the circumstances of this case demonstrate, the denial of such an offset to the seller for flaws in the transaction documents is likely to result in greater inequity than where the nonconformity affects the use of the goods. Defects in goods are more likely to be discovered in the course of their use within a reasonable time after the sale and before the decline in value from use or obsolescence has reached onerous proportions.

Section 42a-2-711, which sets forth the remedies available for a revocation of acceptance pursuant to § 42a-2-608, provides that "the buyer may cancel" and recover "so much of the price as has been paid," in addition to other relief. Most of the courts that have considered this provision have not held it to require a one-way rescission, as does the majority opinion, where the benefits retained by the buyer are substantial. *Orange Motors of Coral Gables, Inc.* v. *Dade County Dairies, Inc.*, 258 So. 2d 319, 321 (Fla. App. 1972); *Pavesi* v. *Ford Motor Company*, 155 N.J. Super. 373, 379, 382 A.2d 954 (1978); *Moore* v. *Howard Pontiac-American, Inc.*, 492 S.W.2d 227, 230 (Tenn. App. 1973); see also *Computerized Radiological Services, Inc.* v. *Syntex Corporation*, 595 F. Sup. 1495, 1511 (E.D.N.Y. 1984), aff'd in part, rev'd in part, 786 F.2d 72 (2d Cir. 1986); *American Container Corporation* v. *Hanley Trucking Corporation*, 111 N.J. Super. 322, 334–35, 268 A.2d 313 (1970); *Gawlick* v. *American Builders Supply, Inc.*, 86 N.M. 77, 79, 519 P.2d 313 (1974). Com-

mentators agree that, after any significant use of the goods by the buyer, an allowance for the fair value of any benefit conferred as a result of such use is not precluded by § 42a-2-711. W. Hawkland, Uniform Commercial Code Series (Sup. 1986) § 2-608:04, p. 91; J. White & R. Summers, supra, p. 317; J. Phillips, "Revocation of Acceptance and the Consumer Buyer," 75 Com. L.J. 354, 357 (1970). In adopting this construction these authorities have resorted to § 103 of article 1 of the UCC (General Statutes § 42a-1-103), which provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity . . . shall supplement its provisions." Relying upon this omnipresence that pervades the UCC, these authorities have concluded that the right of the buyer to "cancel" and to obtain a refund of the purchase price is implicitly subject to the standard equitable prerequisite that the party seeking a rescission restore the benefits he has received. The two cases relied upon in the majority opinion overlook the significance of § 103. *Stridiron* v. *I.C., Inc.*, 578 F. Sup. 997, 1003 (D. Virgin Islands 1984); *Sanborn* v. *Aranosian*, 119 N.H. 969, 970, 409 A.2d 1352 (1979).

The majority opinion does not attempt to distinguish a rescission following revocation of acceptance pursuant to § 42a-2-608 from other situations where the equitable principle of restoration of benefits is applicable, but simply regards the failure to mention any offset in § 42a-2-711, in contrast to the express provision in § 42a-2-718 (3) for remedies available to a defaulting buyer, as conclusive of legislative intent. Regardless of how this controversy over § 42a-2-711 should be resolved in the context of sales of goods, to which it indisputably pertains, it makes little sense to select for application to RISFA a rule of law so questionable in terms of policy and fairness when applied

to buyers who have retained substantial benefits from the use of goods returned to the seller long after the transaction.

If the UCC were at all applicable to a nonconformity of documents claimed to have had some effect on a buyer, a more appropriate provision would be § 42a-2-714, which allows a buyer to recover any provable damages, direct or consequential, that he has sustained because of a nonconformity of goods he has accepted, without the necessity of revocation, prompt or otherwise. This remedy as a supplement to the rescission approved in *Keyes* v. *Brown,* supra, would adequately redress any loss sustained by a buyer where the rescission remedy is inadequate. In seeking to go beyond compensating buyers for any losses actually sustained and to impose a forfeiture unrelated to actual injuries suffered, however, the majority opinion goes well beyond our proper judicial role. It is not for this court by creating more severe punishments to attempt to curb violations of statutes, remedial or otherwise, for which the legislature has provided specific penalties. To the extent that the present sanctions for RISFA violations may be inadequate, the forum for modificaton is the General Assembly.

I also disagree with the portion of the opinion that attempts to justify on other grounds the failure of the trial court to offset the substantial benefit received by the defendants against their recovery of their payments. It is rank speculation to assume that the $6600 received by the plaintiff in reselling the car at wholesale, plus whatever return was derived from its retention of the periodic payments during the twenty-six month period, would even approximately equal the value of the use of the car during the same period. If the defendants had rented the car from the plaintiff at a monthly rental corresponding to the $16,250 total

rental value for the period of use that the testimony indicates, the plaintiff would have derived a greater return from the periodic rental payments.

I would remand the case for further proceedings to determine the amount of a reasonable allowance for use of the automobile to offset against the refund due the defendants, as well as for a further hearing on the award of attorney's fees.