# LEVESQUE BUILDERS, INC. *v.* CADWELL HOERLE
## (AC 16530)

Lavery, Schaller and Spear, Js.

Argued April 28—officially released August 11, 1998

Leslee B. Hill, with whom, on the brief, was Robert A. Ziegler, for the appellant (defendant).

Maureen M. Lovejoy, for the appellee (plaintiff).

Opinion

SCHALLER, J. The defendant appeals from the judgment of the trial court awarding damages to the plaintiff for the defendant's breach of contract between the parties for the sale of real property. The defendant claims that the trial court improperly (1) determined that the contract was enforceable, (2) determined that the contract language satisfied the statute of frauds, (3) awarded attorney's fees to the plaintiff under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.,[1] (4) denied the defendant's motion in limine and (5) denied the defendant's motion for a mistrial. We affirm the judgment of the trial court in part, and set aside the judgment with respect to the award of attorney's fees.

The following facts are relevant to the resolution of this dispute. In May, 1991, the parties signed a contract that provided that the defendant would sell a thirty-six acre parcel and two building lots in New Hartford to the plaintiff for $110,000. The plaintiff paid a deposit

[1] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

of $1000 and received a copy of the September, 1990 map referenced in the contract. The plaintiff was told that the thirty-six acre parcel included all of the property located to the right of a red line drawn on the map.

In January, 1993, the plaintiff, with permission from the defendant, arranged for the sale of one of the building lots to a third party. The defendant was paid $45,000, thus reducing the amount owed by the plaintiff to $64,000 for the remaining lot and the thirty-six acre parcel. In February, 1993, the defendant asked the plaintiff to sign a second contract, which allegedly contained only minor changes from the original contract, and which acknowledged the sale of the lot. The map referenced in this second contract, however, was different from that referenced in the original contract. The plaintiff never received a copy of the new map, and the trial court determined that the map did not exist. The plaintiff signed this second contract, assuming that it would be purchasing the same thirty-six acres referred to in the September, 1990 map.

In the spring of 1993, the plaintiff purchased the remaining lot from the defendant for $35,000, leaving a balance of $29,000 owing on the thirty-six acre parcel. In September, 1993, the plaintiff purchased a third lot from the defendant under a separate contract. At that time, the defendant indicated that the plaintiff could close on the thirty-six acre parcel in December, 1993. In January, 1994, however, the plaintiff was informed that the defendant did not intend to convey the parcel, and that he was claiming that there was an ambiguity in the description of the property. The defendant, meanwhile, had begun developing the parcel in April, 1993, and had mortgaged the property to Shawmut Bank in April, 1994, which mortgage was being foreclosed at the time of trial.

On August 17, 1994, the plaintiff brought a complaint in four counts, seeking specific performance and money

damages for breach of contract, and alleging fraudulent or negligent representation and a violation of CUTPA. The defendant filed a special defense, claiming that the contract was unenforceable because it failed to comply with General Statutes § 52-550, the statute of frauds.[2] He also filed a counterclaim, alleging that the plaintiff brought the action without probable cause and with malicious intent, and alleging a violation of CUTPA. A trial to the court was held on the matter for six days during the period of June 6 through July 6, 1996. On October 9, 1996, the trial court released a thirteen page memorandum of decision and an order that judgment enter for the plaintiff in the amount of $151,000 for damages on the contract and $2500 in attorney's fees, plus costs. This appeal by the defendant followed.

I

The defendant's first claim is that the trial court improperly determined that an enforceable contract existed. We are not persuaded.

In its memorandum of decision, the trial court found that "[t]here is no question that the parties agreed that the plaintiff would purchase and the defendant would sell to [it] the two lots plus 36 [plus or minus] acres for the sum of $110,000 and that the plaintiff did in fact pay to the defendant a down payment of $1000, plus $80,000 for the two lots." The defendant, however, claims that no contract existed because there was no meeting of the minds between the parties.

"Whether a contract exists is a question of fact for the court to determine." (Internal quotation marks omitted.) *Harris Calorific Sales Co.* v. *Manifold Systems,*

---

[2] General Statutes § 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ."

*Inc.*, 18 Conn. App. 559, 563, 559 A.2d 241 (1989). "It is not within the power of this court to find facts or draw conclusions from primary facts found by the trial court. As an appellate court, we review the trial court's factual findings to ensure that they could have been found legally, logically and reasonably." (Internal quotation marks omitted.) *Lembo* v. *Schlesinger*, 15 Conn. App. 150, 154, 543 A.2d 780 (1988). Thus, the trial court's factual determination that a contract existed must stand unless we conclude that it was clearly erroneous. See *Buddenhagen* v. *Luque*, 10 Conn. App. 41, 44, 521 A.2d 221 (1987).

"Appellate review under the clearly erroneous standard is a two-pronged inquiry: [W]e first determine whether there is evidence to support the finding. If not, the finding is clearly erroneous. Even if there is evidence to support it, however, a finding is clearly erroneous if in view of the evidence and pleadings in the whole record [this court] is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Nelson* v. *Nelson*, 13 Conn. App. 355, 359, 536 A.2d 985 (1988).

In the present case, the trial court found that an enforceable contract existed between the parties. The trial court based its holding on careful consideration of the written contracts, the maps referenced therein, surveys prepared by the parties, and the testimony of the parties and their expert witnesses. In light of the evidence and the pleadings in the record as a whole, we cannot say that the trial court's finding that the parties intended that there be a sale of the thirty-six acre parcel and, therefore, that an enforceable contract existed, was clearly erroneous.

## II

The defendant's second claim is that the trial court improperly determined that the contract language satisfied the statute of frauds under § 52-550. Specifically,

the defendant asserts that the description of the disputed parcel in the contract is not sufficiently specific. We disagree.

We first consider whether the plaintiff's part performance of the contract removes the case from the purview of the statute of frauds. "The statute of frauds requires contracts for the conveyance of realty to be in writing. . . . We have repeatedly recognized that a contract is enforceable, despite the statute, when, subsequent to the making of the contract, there has been conduct that amounts to part performance. . . . [T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) *McNeil* v. *Riccio*, 45 Conn. App. 466, 470, 696 A.2d 1050 (1997).

In the present case, the plaintiff contends that its payment of $81,000 on the contract is an act of part performance and, therefore, the contract is enforceable regardless of the statute of frauds. We do not agree with this argument. Our Supreme Court has stated that "[i]t is generally held that partial or even full payment of the purchase price for the sale of land under an oral contract does not take the case out of the statute of frauds." *Breen* v. *Phelps*, 186 Conn. 86, 94, 439 A.2d 1066 (1982).

Nevertheless, we find that the statute of frauds is not violated by the contract description of the thirty-six

acre parcel. We have previously determined that "[t]he description of land contained in a contract of sale or any option to purchase is sufficiently definite to satisfy the requirements of the Statute of Frauds whenever it is *reasonably certain* from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written." (Emphasis added; internal quotation marks omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 735, 682 A.2d 1026, cert. denied 239 Conn. 931, 683 A.2d 397 (1996).

In its memorandum of decision, the trial court found that "[a] description of the 36 [plus or minus] acres has been made sufficiently definite through reference to the two contracts, the map attached to the first contract, other maps and descriptions, plus the testimony placed in evidence at trial." Because the determination of whether a contract is sufficiently definite to satisfy the statute of frauds is a question of fact, the trial court's findings in this regard must stand unless they are clearly erroneous. See *Buddenhagen* v. *Luque*, supra, 10 Conn. App. 44. Upon review of the evidence at trial and the whole record, we conclude that the trial court's finding that the contract satisfied the statute of frauds was not clearly erroneous.

### III

The defendant next claims that the trial court improperly awarded attorney's fees under CUTPA. We agree.

This court has stated that "[o]nce liability has been established under CUTPA, attorney's fees and costs may be awarded at the discretion of the court. . . . We will not interfere with the trial court's exercise of this discretion unless there is manifest abuse or injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 131, 679 A.2d 27 (1996), aff'd, 240 Conn. 654, 692 A.2d 809 (1997).

In the present case, the trial court found that the defendant had violated CUTPA and awarded the plaintiff $2500 in attorney's fees, plus costs. The defendant argues that the award of attorney's fees was improper because the plaintiff abandoned the CUTPA claim prior to trial. In the alternative, the defendant claims that the award was improper because the plaintiff failed to present evidence of the alleged CUTPA violation or to support an award of attorney's fees. We will address each of these claims in turn.

## A

The defendant first claims that the award of attorney's fees under CUTPA was improper because the plaintiff abandoned the CUTPA claim prior to trial by failing to request attorney's fees in its amended claim for relief. We disagree.

The following additional facts are necessary for the resolution of this claim. The plaintiff claimed a CUTPA violation by the defendant in the fourth count of its August 17, 1994 complaint. In that complaint, the plaintiff claimed money damages and "fees and costs" pursuant to the relevant statutes. On July 9, 1996, the plaintiff filed an amended claim for relief, along with a response brief to the defendant's motion to dismiss. The claim for relief sought specific performance and an alternative claim for damages that arose out of the alleged contract, but did not specifically request money damages or attorney's fees pursuant to CUTPA.

This court has stated that "[w]hen prosecuting a civil matter, the general rule is that a prayer for relief must articulate with specificity the form of relief that is sought. . . . A party who fails to comply with this rule runs the risk of being denied recovery." (Internal quotation marks omitted.) *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 129, 133–34, 619 A.2d 863 (1993). We conclude that the plaintiff's specific prayer

for fees and costs under CUTPA, as stated in its complaint, satisfied the rule in *Solomon*. While the plaintiff's amended claim for relief did not request attorney's fees, there was no indication that the claim for relief was intended to replace the prayer for relief in the original complaint. Further, the plaintiff's response brief, filed the same day as the amended claim for relief, asserted CUTPA violations by the defendant. It is apparent, therefore, that the plaintiff did not abandon the CUTPA claim prior to trial. Under these circumstances, we refuse to elevate form over substance by holding that the plaintiff abandoned its claim for attorney's fees. See *Southington '84 Associates* v. *Silver Dollar Stores, Inc.*, 237 Conn. 758, 768–69, 678 A.2d 968 (1996).

B

We next turn to the defendant's alternative claim that the trial court's award of attorney's fees was improper because the plaintiff did not present evidence of a CUTPA violation or to support an award of attorney's fees at trial. We agree with the latter assertion.

In the memorandum of decision, the trial court clearly determined that the defendant had violated CUTPA "by encroaching on the property subject to the first contract, by referring to a nonexistent map in the second contract, by proceeding to subdivide the property when he knew he had contracted to sell it to the plaintiff and by placing a mortgage on the property." Our review of the whole record confirms that the evidence presented at trial supports this finding.

Nevertheless, we conclude that the trial court's award of attorney's fees was improper because the award was made without affording the parties the opportunity to present evidence and to be heard on the issue of reasonable attorney's fees. Our Supreme Court has stated that a party seeking attorney's fees must satisfy the " 'undisputed requirement that the reasonableness of attorney's

fees and costs . . . be proven by an appropriate evidentiary showing." (Internal quotation marks omitted.) *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 121, 520 A.2d 162 (1987), quoting *Hartford Electric Light Co.* v. *Tucker*, 183 Conn. 85, 91, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981). This protects the opposing party's right to litigate fully the reasonableness of the attorney's fees. *Barco Auto Leasing Corp.* v. *House*, supra, 121. In the present case, no hearing was held, and neither the plaintiff nor the defendant presented any testimony or other evidence concerning the claim of reasonable attorney's fees. The issue of attorney's fees must be fully addressed at a further hearing. See *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 772, 677 A.2d 479 (1996).

## IV

The defendant's fourth claim is that the trial court improperly denied his motion in limine. We disagree.

On the first day of trial on June 5, 1996, the defendant filed a motion in limine, seeking to exclude the testimony of the plaintiff's appraiser because of the plaintiff's alleged discovery abuses and failure to comply with Practice Book (1998 Rev.) § 13-4, formerly § 220. Specifically, the defendant asserted that the plaintiff failed to produce the appraiser's report to him in a timely manner, and the plaintiff's disclosure of experts failed to state the substance of the facts and opinions to which the experts were expected to testify or the grounds for those opinions. The trial court denied the motion, but offered to grant the defendant a continuance from June 5, 1996, until July 2, 1996, to provide the defendant with more time for his appraiser to prepare and to depose the plaintiff's appraiser. The defendant declined the continuance.

A trial court may "entertain a motion in limine made by either party regarding the admission or exclusion of anticipated evidence. . . . The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding." Practice Book (1998 Rev.) § 42-15. "This court has said that '[t]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial.' *Richmond* v. *Longo*, 27 Conn. App. 30, 36, 604 A.2d 374, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992)." *State* v. *Pharr*, 44 Conn. App. 561, 580–81, 691 A.2d 1081 (1997).

Our courts have also held, however, that "[a] continuance is ordinarily the proper method for dealing with a late disclosure. *State* v. *Villafane*, 171 Conn. 644, 669, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977) . . . . *State* v. *Barrett*, 205 Conn. 437, 455, 534 A.2d 219 (1987). A continuance serves to minimize the possibly prejudicial effect of a late disclosure and absent such a request by the party claiming to have been thus prejudiced, appellate review of a late disclosure claim is not warranted. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven*, 205 Conn. 741, 748, 535 A.2d 1287 (1988); *State* v. *Miner*, 197 Conn. 298, 305–306, 497 A.2d 382 (1985)." (Internal quotation marks omitted.) *Giardini* v. *Supermarkets General Corp.*, 24 Conn. App. 9, 12–13, 585 A.2d 110 (1991).

In the present case, the defendant never requested a continuance nor did he accept the trial court's offer to grant him one. This court has stated that "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State*

v. *Marsala*, 44 Conn. App. 84, 91, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). Here, the trial court denied the defendant's motion in limine because it determined that a continuance would best protect the defendant from undue prejudice caused by the plaintiff's alleged disclosure violations. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion in limine.

V

The defendant's final claim is that the trial court improperly denied his motion for a mistrial. We disagree.

In his motion for a mistrial, the defendant asserts that the trial court was unduly biased in favor of the plaintiff. Specifically, the defendant points to the trial court's (1) denial of the defendant's motion in limine, (2) admission into evidence of the plaintiff's tracing of a land survey and (3) request that the defendant's attorney not stare at her during his cross-examination of the plaintiff's appraiser. The defendant's claim of undue prejudice and error in the denial of his motion for a mistrial is unavailing. "[A] mistrial is only warranted if, as a result of some occurrence, 'it is apparent to the court that . . . a party cannot have a fair trial and the whole proceedings are vitiated.'" *Patrick* v. *Burns*, 5 Conn. App. 663, 673, 502 A.2d 432 (1985), cert. denied, 198 Conn. 805, 504 A.2d 1059 (1986), quoting *Ferino* v. *Palmer*, 133 Conn. 463, 466, 52 A.2d 433 (1947).

We have already determined that the trial court's denial of the defendant's motion in limine was not an abuse of the court's discretion and, therefore, did not deny the defendant a fair trial. The trial court's admission into evidence of the plaintiff's tracing of a land survey, as an evidentiary ruling, is also governed by the clear abuse of discretion standard. See *State* v. *Marsala*, supra, 44 Conn. App. 91. Upon review of the exhibits, transcripts and the record, we find that the trial court

did not abuse its discretion in admitting the tracing. Finally, we are not persuaded that the trial court's request for the defendant's counsel to stop staring at her demonstrated any unfair prejudice by the trial court. The request was made during the following colloquy on July 3, 1996:

"The Court: You don't have to keep staring at me every time [the plaintiff's expert] talks, just keep going.

"[Defense Counsel]: I didn't mean to stare at you, I'm sorry.

"The Court: Okay."

We do not find that those comments give any indication that the trial court was biased or prejudiced against the defendant. We conclude that the defendant has failed to establish that he was prejudiced by the trial court's actions and failed to establish that the trial court abused its discretion in denying his motion for a mistrial.

The judgment is reversed with respect to the award of attorney's fees only and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.