[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This litigation was generated by a dispute over the enforceability of an option contract on a certain parcel of real estate in the Town of Brookfield and seeks a declaratory judgment nullifying that option agreement. Not only is it appropriate but necessary to identify the persons named herein who directly or indirectly have or had an interest in the described property. Eva Gurski (hereafter "Eva"), the mother of Frank J. Gurski, Jr., was born in Poland and immigrated to the United States as a teenager. She met and married Frank Gurski and settled in Brookfield before Stanley was born in 1917. Another son was born of the union of these two whose name is Frank, Jr., and he too lived in Brookfield. He was the father of the coplaintiff, Frank J. Gurski, Jr.[1] Eva's CT Page 15941-ke husband, Frank, died in the early 1940s, and she never remarried.
The plaintiffs' have filed an amended complaint in five counts in which they allege that the option is void and unenforceable for lack of consideration, for failure to satisfy the statute of frauds, unconscionability, and because the town failed to exercise its option after being given the opportunity to do so. Counts four (4) and five (5) were dismissed by the court at the conclusion of the plaintiffs' case in chief. The defendants have duly filed a counterclaim.
Frank and Eva obtained the title of one hundred nine (109) acres, more or less, from Warren F. Washburn by warranty deed dated July 24, 1917, and recorded on July 26, 1917 in Volume 24, page 88 of the Brookfield Land Records. On September 21, 1936, Frank quitclaimed all of his right, title and interest in and to the one hundred nine (109) acre, more or less, parcel to Eva, which deed was recorded on September 21, 1936 in Volume 28, page 166 of the Brookfield Land Records. On April 9, 1946, Eva conveyed the title to seven point four five nine (7.459) acres to Louis Singer and Madelyn Singer by warranty deed, which deed was recorded on April 11, 1946 in Volume 37, page 45 of the Brookfield Land Records. This conveyance came from the northerly portion of the one hundred nine (109) acre parcel. On July 13, 1951, Jessie Roe Fiske conveyed a three and a half (3-1/2) acre twenty-three (23) rod parcel (hereafter the "Fiske parcel"), more or less, by quitclaim deed to Eva, which deed was recorded on July 13, 1951 in Volume 39, page 597 of the Brookfield Land Records. These conveyances represent all the real estate transactions of the Gurski property on the north side of Route 133, so-called. There are several other conveyances of real estate situated on the SOUTH SIDE of Route 133 which are neither material nor relevant to this action.
The family utilized the property as a farm, and Eva frequently expressed a desire over the years that none of it go to developers. It was also her desire that it would remain as open space where the residents of the town could walk and commune with nature as it were.
Eva and the Town entered into an option agreement, here in issue, on January 3, 1967.[2] It had two components which allowed the defendant to purchase the property in two parts at two different times.[3] They first gave the defendant the option to purchase the northerly portion of the Washburn parcel that remained after the sale of the Singer parcel. That property was described in "Schedule A" of the option contract and was said to consist of 80.911 acres. The defendant exercised its option to purchase that tract (Schedule A) in 1968, and Eva signed a warranty deed which conveyed it to the Town on March 5, 1968, which deed was CT Page 15941-kf recorded in Volume 77, page 489 of the Brookfield Land Records. This component of the option is not before the court.
The second component, the enforceability of which is at issue herein, purports to allow the Town to purchase all or part of the southerly portion of Eva's remaining property north of Route 133. The description thereof as set forth in the instrument is as follows: "It is mutually understood and agreed that Seller owns premises adjoining on the South side of the premises described in SCHEDULE A, which premises form a part of the original tract owned by Seller herein and have been reserved by Seller and are hereafter referred to as the `reserved parcel.'" This is the only description of the property in question contained in the contract. The plaintiffs claim that this description is so ambiguous that the contract cannot be enforced.
Resolution of this issue turns on the statute of frauds, which is codified as § 52-550 of the General Statutes, and case law interpreting the requirements of that statute. Section 52-550 reads, inter alia: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party or the agent of the party to be charged: . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property. . . ." This agreement clearly concerns the sale of real property, and raises the question of whether or not it is deemed sufficient to qualify as a writing for the purposes of the statute.
"The option to purchase relates to an interest in land and is subject to the statute of frauds. . . . Under our statute, the option must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." (Citation omitted; internal quotation marks omitted.) Pigeon v. Hatheway,156 Conn. 175, 181-82 (1968). It is not necessary, however, to state the subject of the agreement with precision, rather, "[t]he description of land contained in a contract of sale or any option to purchase is sufficiently definite to satisfy the requirements of the Statute of Frauds whenever it is reasonably certain from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written." (Emphasis in original; internal quotation marks omitted.) LevesqueCT Page 15941-kgBuilders, Inc. v. Hoerle, 49 Conn. App. 751, 757 (1998).
The plaintiffs argue that the term "original tract," found in the description of the reserved parcel is ambiguous in that it is unclear whether the original tract includes the Fiske parcel, or if it includes only the balance of the Washburn parcel. The Town counters that the Fiske parcel merged with the Washburn parcel, and that the words "original tract" refer to both the remaining Washburn parcel and the Fiske parcel. Alternatively, the Town argues that if the court concludes that the option contract only refers to the Washburn parcel, the option should be enforced to that extent.
As to the plaintiffs' contention that the contract is ambiguous, the court agrees. The use of the term "original tract" is subject to two interpretations, both equally reasonable. They argue that the term refers to the Washburn parcel, without the Fiske parcel, because that is the original tract the Gurskis owned, and the Fiske parcel never merged with the Washburn parcel. The Town argues that the Gurskis have always treated the Washburn and Fiske parcels as one tract of land and, again, that the words "original tract" mean both parcels taken together.
The parties each employ a different frame of reference in interpreting the meaning of this agreement. The plaintiffs assert that Eva considered the Washburn parcel to be the original tract, and the Fiske parcel to be a separate tract of land. Thus, they focus on the time when Eva acquired the parcels. The Town, conversely, maintains that the whole of Eva's property prior to the execution of the first option is the original tract, and that everything to the south of the portion that was part of the Schedule A property is appropriately described as the remaining portion of the original tract. They, therefore, focus on the order in which the property was to be conveyed rather than the time when Eva acquired it. Once again, these interpretations are equally reasonable.
The court concludes that this ambiguity renders this option contract unenforceable. In order for a contract for the sale of land to be enforceable, it must meet three minimum requirements to qualify as a writing. Pigeon v. Hatheway, supra. To reiterate, Pigeon goes on to say that three essential terms must appear on the face of the contract. These are the subject of the agreement, the terms of the agreement and the parties to the agreement. Only if the essential terms are established, may parol evidence may be introduced to describe the land "whenever it is reasonably certain from the contract itself, or can be made certain through reference to record, contract, map or fact, by resort to extraneous evidence thereof, whether oral or written." Here, the CT Page 15941-kh essential item that is absent is the subject of the agreement. Because it is not clear whether the parcel Eva intended to convey included the Fiske property, extraneous evidence as to the boundaries of the parcels cannot be used to resolve the ambiguity in the contract.
This case is somewhat similar to Pigeon, wherein the plaintiff brought an action to quiet title to declare invalid an option contract for a share of certain agricultural real estate, not including the so-called "house lot," on the ground that the description could not be ascertained. The court agreed with the plaintiff, and concluded that the description failed to satisfy the statute of frauds because it was "palpably uncertain and indefinite" and that the option was unenforceable. Pigeon v. Hatheway, supra, 182-85.
Similarly, in Montaro Brothers Building, Inc. v. Snow, 190 Conn. 481,484-86 (1983), the parties had executed an option agreement whereby the plaintiff would purchase approximately seventy-three (73) acres of the defendants' farm, minus approximately six (6) acres, which the defendants would retain. Again, the Supreme Court concluded that the option was unenforceable for lack of certainty.
Levesque Builders, Inc. v. Hoerle, supra, 756-57, is clearly distinguishable from the case at bar. There, the trial court concluded that the property in question was sufficiently described in the contract and by reference to a map drawn up for a previous contract for the same property. Thus, the essential term at issue in Levesque Builders, i.e., the subject, was found to be sufficiently certain to merit looking at an extraneous map from a previous contract. In this case, however, the subject of the contract is ambiguous because it is not clear whether the parties agreed to the sale and purchase of one or two lots, and the maps in evidence will not resolve this ambiguity. Levesque illustrates the logic behind the rule, if one cannot determine what the contract is for, extraneous evidence will not supply the details. Because the court concludes that the contract is missing an essential term, therefore, it will not consider such extraneous evidence. This conclusion also disposes of the defendants' claim that the Fiske and Washburn parcels merged.
Finally, the defendants argue that even if the court determines that the phrase "original tract" refers only to the Washburn parcel, the defendants should be permitted to purchase the remainder of the Washburn parcel. Because the court concludes that the contract itself is unenforceable pursuant to the statute of frauds, this argument also must fail. CT Page 15941-ki
Judgment may enter for the plaintiffs, declaring the subject option agreement null and void, and judgment may also enter for the plaintiffs on the defendants' counterclaim.
Moraghan J.T.R.
[EDITORS' NOTE: EXHIBIT F IS ELECTRONICALLY NON-TRANSFERRABLE.]