## FAMILY FINANCIAL SERVICES, INC. *v.*
## CARMEN SPENCER
## (14541)

Dupont, C. J., and Schaller and Spear, Js.

Argued December 13, 1995—officially released June 18, 1996

*William H. Cashman* filed a brief for the appellants (plaintiff et al.).

*Lori Welch-Rubin*, with whom, on the brief, was *Barry Sigal*, for the appellee (named defendant).

SCHALLER, J. The plaintiff, Family Financial Services, Inc.,[1] appeals from the judgment of the trial court rendered in favor of the defendant, Carmen Spencer, on the plaintiff's complaint. The plaintiff, together with the counterclaim defendants, Aglino Masotta and Edward Masotta, also appeal from the judgment rendered against them in favor of the defendant on the defendant's counterclaims. The plaintiff and the Masottas[2] claim that the trial court improperly (1) found that the Masottas were the makers of the loans rather than investors in the loans, (2) concluded that the mortgage assignment needed to be recorded, (3) concluded that the loan was unconscionable, (4) concluded that Public

---

[1] The appellants did not appear at oral argument and are deemed to have waived it.

[2] The trial court dismissed the plaintiff's foreclosure action based on a finding of lack of standing, leaving the plaintiff as counterclaim defendant. Pursuant to Practice Book § 102 and General Statutes § 52-110, the trial court granted the defendant's motion to cite in the Masottas as counterclaim defendants. The appellants in this case are the plaintiff and the Masottas.

Acts 1993, No. 93-130, § 1 (8),[3] did not apply, (5) concluded that the federal Truth in Lending Act (TILA)[4] negates the common law requirement of tender back necessary effectively to rescind a transaction, and (6) failed to hold an evidentiary hearing before awarding attorney's fees. We affirm the trial court's judgment except as to the issue of attorney's fees, which we remand for further proceedings.

The relevant facts are as follows. The defendant is the owner of a three-family house in Bridgeport. When the defendant needed a loan to repair a leaking roof, she was referred to the plaintiff to apply for a second mortgage. On July 16, 1990, the plaintiff and the defendant entered into a loan agreement secured by a second mortgage. The amount of the loan was $30,000 with an interest rate of 20 percent. The note required eleven monthly payments of $500 with a final balloon payment of $30,500 on July 20, 1991. In the defendant's loan application, she stated that her monthly income was $1126.67 and that she owed a monthly amount of $1011 to People's Bank on a first mortgage. The plaintiff placed the defendant in a class C category that did not require income verification. When the defendant was unable to make the balloon payment in July, 1991, the plaintiff arranged to rewrite the loan.

On July 17, 1991, the parties entered into another loan agreement that allowed the defendant to fulfill her obligation of repayment under the July, 1990 mortgage. The amount of the note in this transaction was $44,000 with an interest rate of 20 percent. The defendant was

---

[3] Public Acts 1993, No. 93-130, provides in pertinent part: "(8) 'Principal amount of the loan' means the gross loan amount the borrower is obligated to repay including any prepaid finance charge and other charges which are financed. The provisions of this subsection shall apply to all loans negotiated before, on and after the effective date of this act." See General Statutes § 36a-510a (5).

[4] See 15 U.S.C. §§ 1601 through 1667e.

required to make eleven monthly payments of $733.33 with a final balloon payment of $44,733.33 on July 22, 1992. Both mortgage transactions required the defendant, as a condition of credit, to pay one year's interest in advance.[5] On July 22, 1992, the defendant was unable to make the required balloon payment.

On November 9, 1992, the plaintiff brought a foreclosure action. The defendant filed special defenses, alleging that the mortgage was a scheme to defraud, was unconscionable, lacked consideration because the plaintiff failed to release the July 16, 1990 mortgage, and violated General Statutes (Rev. to 1991) § 36-224*l*.[6] The defendant also pleaded as special defenses that she had rescinded the loan after learning that the mortgage violated TILA, that the plaintiff had fraudulently concealed that it was acting as a broker, and that the plaintiff had made assignments of the mortgage to defraud the defendant of ownership of her property. The defendant also filed counterclaims alleging that the plaintiff and the Masottas violated General Statutes (Rev. to 1991) §§ 36-224*l*, 37-4,[7] 37-9,[8] TILA, and the Connecticut

[5] That payment was supposed to be held in an escrow account.

[6] General Statutes (Rev. to 1991) § 36-224*l* provides in pertinent part: "(a) No person engaged in the secondary mortgage loan business in this state as a lender or a broker, including any licensee under this chapter, and any person who is exempt from licensing under section 36-224c, may (1) charge, impose or cause to be paid, directly or indirectly, as an incident to or a condition of the extension of credit in any secondary mortgage loan transaction, any loan fees, points, commissions, transaction fees or similar prepaid finance charges determined in accordance with chapter 657 and regulations adopted thereunder which exceed in the aggregate ten per cent of the principal amount of the loan . . . ."

[7] General Statutes § 37-4 provides: "No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 21-44, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."

[8] General Statutes § 37-9 provides in pertinent part: "The provisions of sections 37-4, 37-5 and 37-6 shall not affect . . . (3) any bona fide mortgage of real property for a sum in excess of five thousand dollars . . . ."

Unfair Trade Practices Act (CUTPA).[9]

The trial court found that the Masottas were the real parties in interest and that the plaintiff lacked standing to maintain the foreclosure action and, therefore, dismissed the plaintiff's claim. The trial court further found that the mortgage transaction was both procedurally and substantively unconscionable. The trial court also found that the plaintiff and the Masottas violated TILA because they had failed to include the future assignment recording fees as a part of the finance charge. Based on the TILA violation, the trial court found that the defendant had executed a timely rescission pursuant to 15 U.S.C. § 1635 (a), which had terminated the plaintiff's and the Masottas' security interest in the property. The trial court determined that because the plaintiff and the Masottas had failed to accept the defendant's rescission pursuant to the procedures of 15 U.S.C. § 1635 (b), the plaintiff and the Masottas were barred from foreclosing on the mortgage.

The trial court further ruled that the plaintiff and the Masottas violated § 36-224*l* by charging the defendant a prepaid finance charge in excess of 10 percent of the principal amount of the loan. As a result of this violation, the trial court ordered the plaintiff and the Masottas to pay $2975 to the defendant. The trial court ruled that the violations by the plaintiff and the Masottas of TILA and § 36-224*l* constituted a violation of CUTPA. The trial court awarded the defendant $20,000 in attorney's fees stemming from the CUTPA violation and granted the defendant an injunction "against Family Financial Services, Inc., and the Masottas from pursuing now or hereafter any relief or foreclosure of the mortgage and the mortgage debt . . . ." This appeal followed.

---

[9] See General Statutes §§ 42-110a through 42-110q.

## I

The plaintiff and the Masottas first claim that the trial court improperly found that the Masottas were the makers of the loan. The plaintiff and the Masottas argue that the evidence does not support the trial court's finding. We disagree.

"[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).[10]

The trial court found that "[b]oth Masottas are the real parties in interest, acting under the aegis of Family Financial Services, Inc." The trial court based that finding on the following evidence: (1) at trial, the attorney who had represented the plaintiff at the closing testified that the $44,000 loan amount came from Aglino Masotta and that none of it came from the plaintiff; (2) Andrew Forte, the plaintiff's vice president, responded to interrogatories by denying that the plaintiff ever sold or assigned the mortgage; and (3) Forte testified that the Masottas did not sign the document purportedly assigning their interest to the plaintiff and failed to swear before a notary public.

We conclude that the trial court's finding is supported by evidence produced at trial and is not clearly erroneous. On the basis of the trial court's findings and the

---

[10] Despite the plaintiff's suggestion that our standard of review for this claim is abuse of discretion, we apply the well established clearly erroneous standard.

record, we cannot conclude that the trial court improperly found that the Masottas were the makers of the loan in question.

## II

The plaintiff and the Masottas next claim that the trial court improperly concluded that the mortgage assignment needed to be recorded. The plaintiff and the Masottas claim that General Statutes § 47-10 does not apply to mortgages. The plaintiff and the Masottas argue that the trial court improperly relied on § 47-10 to support its determination that the plaintiff lacked standing because it was not the holder of the mortgage debt. We disagree.

The following additional facts are relevant to this issue. On August 12, 1993, a pretrial hearing was held on the defendant's motion to dismiss in which she claimed that the plaintiff lacked standing. After the pretrial hearing, the plaintiff amended its complaint to allege that the plaintiff had assigned the mortgage note and deed to Aglino Masotta and that on September 14, 1993, he assigned the note and deed back to the plaintiff. When the trial resumed on March 29, 1994, the defendant challenged the purported assignment of September 14, 1993, as invalid because Forte had forged the signatures of Aglino and Edward Masotta on that assignment. Forte purportedly had a power of attorney to sign real estate documents for the Masottas. In addition, the assignment in question disclosed an acknowledgment by a notary public, who was an employee of the plaintiff, to the effect that the Masottas had appeared personally before him and acknowledged that the assignment was their free act and deed. The trial court found, in fact, that neither of the Masottas had appeared before the notary public to be sworn. The trial court also found that Forte had forged the signatures of the Masottas. Finally, the trial court found that Forte had neither

signed nor acknowledged the assignment, and that he did not place the power of attorney on the land records together with the assignment of September 14, 1993, as required by General Statutes § 47-10.

General Statutes § 47-10 provides that "[n]o conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. *When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed,* unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed." (Emphasis added.) "Because the wording of § 47-10 has remained in essentially the same form since the 1800s, we may presume legislative acquiescence in our interpretation of the mortgage lien statute. '[I]ts subsequent nonaction may be understood as a validation of that interpretation.' *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 134, 527 A.2d 672 (1987), quoting *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 439, 525 A.2d 91 (1987)." *Farmers & Mechanics Savings Bank* v. *Garofalo*, 219 Conn. 810, 817, 595 A.2d 341 (1991).

"Mortgages have always been regarded as conveyances of land within the meaning of the recording statute. . . . The assignment is in effect a conveyance of the land included in the mortgage. . . . That an assignment of a mortgage falls within the purview of the recording statute follows from the nature of such an instrument . . . ." (Citations omitted.) *Second National Bank* v. *Dyer*, 121 Conn. 263, 267–68, 184 A. 386 (1936); *Farmers & Mechanics Savings Bank* v. *Garofalo*, supra, 219 Conn. 816 n.8; *Cottiero* v. *Ifkovic*, 35 Conn. App. 682, 690, 647 A.2d 9, cert. denied, 231 Conn. 938, 651 A.2d 262 (1994). Our courts have clearly interpreted § 47-10 to apply to the assignment of mort-

gages. We conclude, therefore, that the trial court properly found that § 47-10 applies to the purported assignment by the Masottas to the plaintiff and that the assignment and the power of attorney needed to be recorded on the land records in order to be effective against the defendant.

III

The plaintiff and the Masottas next claim that the trial court improperly concluded that the mortgage loan transaction at issue was unconscionable. The plaintiff argues that the court lacked an evidentiary basis to support its finding of procedural and substantive unconscionability. We conclude from the facts as found by the trial court, and as supported by the evidence in the record, that the trial court correctly concluded that the mortgage transaction in question was unconscionable.

Our first consideration is the standard of review for a claim of unconscionability. "[T]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case." *Iamartino* v. *Avallone*, 2 Conn. App. 119, 125, 477 A.2d 124, cert. denied, 194 Conn. 802, 478 A.2d 1025 (1984); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 87, 612 A.2d 1130 (1992). Our review on appeal is not limited to determining whether there has been clear error. *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 88; *Texaco, Inc.* v. *Goldart*, 206 Conn. 454, 461, 538 A.2d 1017 (1988). "[T]he ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and . . . the trial court's determination on that issue is subject to a plenary review on appeal. It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command. Thus, those findings must stand unless they are clearly erroneous. *Pan-*

*dolphe's Auto Parts, Inc.* v. *Manchester,* [supra, 181 Conn. 221–22]." *Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 88.

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. J. Calamari & J. Perillo, Contracts (3d Ed.) § 9-40." *Edart Truck Rental Corp.* v. *B. Swirsky & Co.,* 23 Conn. App. 137, 142, 579 A.2d 133 (1990). "As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. *Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242 (1983); *Hamm* v. *Taylor,* 180 Conn. 491, 495, 429 A.2d 946 (1980)." *Iamartino* v. *Avallone,* supra, 2 Conn. App. 125. "As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, '[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.' " *Hamm* v. *Taylor,* supra, 495–96. Unconscionability is determined on a case-by-case basis, "taking into account all of the relevant facts and circumstances." *Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 223 Conn. 89; *Hamm* v. *Taylor,* supra, 495–96.

The trial court found as follows: (1) the defendant had a limited knowledge of the English language, was uneducated and did not read very well; (2) the defendant's financial situation made it apparent that she could not reasonably expect to repay the second mortgage; (3) at the closing, the defendant was not represented by an attorney and was rushed by the plaintiff's attorney to sign the documents; (4) the defendant was not informed until the last moment that, as a condition of

credit, she was required to pay one year's interest in advance; and (5) there was an absence of meaningful choice on the part of the defendant. Finally, in determining unconscionability, the court also took into account the fact that the plaintiff failed to disclose to the defendant that the real lenders in this transaction were the Masottas. We conclude that these findings are adequately supported by the evidence in the record and are not clearly erroneous. On that basis, we conclude that the trial court properly determined that this transaction was procedurally unconscionable.

The plaintiff and the Masottas next argue that the mortgage was not substantively unconscionable. The plaintiff and the Masottas argue that the defendant planned to sell her house and use the proceeds of that sale to make the balloon payment. The defendant testified that she attempted to sell the property before receiving the loan and that she thought about selling the property. She did not testify, however, that it was her plan to sell the property in order to pay off the mortgage.

The trial court found that the terms of the mortgage were unreasonably favorable to the plaintiff. The trial court also found that the defendant's monthly income was $1126.67 and that she owed $1011 monthly to People's Bank on her first mortgage. On the basis of those findings, the trial court concluded that it was obvious that the defendant would not be able to make the required balloon payment at the end of the year. Finally, the trial court found that the defendant lacked a reasonable opportunity to understand the terms of the contract. We conclude that the trial court's findings are supported by the record and the determination of substantive unconscionability is appropriate.

IV

The plaintiff and the Masottas next claim that the language of No. 93-130 of the 1993 Public Acts (P.A. 93-

130), is sufficiently clear to demonstrate the legislative intent that it applies to pending actions. The plaintiff and the Masottas argue that the legislature clearly and unequivocally intended to apply the amendment to pending actions by including the following language: "The provisions of this subsection shall apply to all loans negotiated before, on and after the effective date of this act." P.A. 93-130, § 8. If P.A. 93-130 applies to this action, it would eliminate the defendant's cause of action based on a violation of General Statutes (Rev. to 1991) § 36-224*l* because the prepaid finance charge would be included within the principal amount of the loan and, therefore, the prepaid finance charge would no longer exceed 10 percent of the principal amount of the loan. Contra *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 80.[11] We disagree with the plaintiff and the Masottas' claim.

In determining the intended effect of an enactment on earlier legislation, two questions must be asked. " 'First, was the act intended to clarify existing law or to change it? Second, if the act was intended to make a change, was the change intended to operate retroactively?' " *State* v. *Magnano*, 204 Conn. 259, 277, 528 A.2d 760 (1987), quoting *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985).

---

[11] In *Cheshire Mortgage Service, Inc.*, our Supreme Court found that the lender miscalculated the principal amount of the loan. *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 103–105. The court reached this decision because the lender included the prepaid finance charge within the principal amount of the loan. Id. The court found that the prepaid finance charge should be categorized as interest and not principal. Id., 103 n.29. As a result of this finding, the court held that the lender violated General Statutes (Rev. to 1991) § 36-224*l* (a) because the prepaid finance charge exceeded 10 percent of the principal amount of the loan, the maximum allowable under the statute. *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 104–105 (court calculated prepaid finance charge at 11 percent). The passage of P.A. 93-130, changes the result in *Cheshire Mortgage Service, Inc.*, by allowing the prepaid finance charge to be included within the principal amount of the loan rather than in the interest.

In order to determine whether this public act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent. *State* v. *Magnano*, supra, 204 Conn. 278. To the extent that legislative history can illustrate whether an act is clarifying legislation, the legislative history of P.A. 93-130 demonstrates that the legislature intended that act to clarify the definition of the term "principal amount of the loan" contained in § 36-224*l*. Senator Martin M. Looney explained: "The bill deals with the clarification of the definition of principal amount of a loan and the calculation of points to include amounts financed." 36 S. Proc., Pt. 6, 1993 Sess., p. 2089. Bob Focht, director of the consumer credit division of the state banking department, explained: "This bill would clarify that the principal amount of the loan, for purposes of calculating points, would be the gross loan amount the borrower is obligated to repay, including any prepaid finance charge and other charges which are financed." 36 S. Proc., Pt. 1, 1993 Sess., p. 37.

Having decided that P.A. 93-130 is clarifying legislation, we do not reach the second question of whether the change was to apply retroactively. Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect. *State* v. *Magnano*, supra, 204 Conn. 284. We note, however, that the retroactive nature of clarifying legislation has limits. Id. It "must not operate in a manner that would unjustly abrogate vested rights." *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 426, 518 A.2d 49 (1986). A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another. *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 71, 441 A.2d 68 (1981); *Rudewicz* v. *Gagne*, 22 Conn. App. 285, 290, 582 A.2d 463

(1990). An enactment cannot be applied retroactively where, as here, a vested right intervenes. Id. In this situation, the clarifying legislation would produce a change in the substantial vested rights enjoyed by the defendant and would effectively deprive her of her cause of action under § 36-224*l*. *DeAlmeida* v. *M.C.M. Stamping Corp.*, 29 Conn. App. 441, 451, 615 A.2d 1066 (1992).

Our analysis of the legislative history of P.A. 93-130 further reveals that when the legislature considered the amendment, a question arose as to whether there were any individuals who might have a cause of action available, as a result of *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 80, who would lose that right upon the amendment's enactment. The response indicated a lack of knowledge on the part of the legislature concerning the defendant's pending action. In addition, there is no express declaration in either the legislative history or the amendment declaring the legislature's intent that the act should apply to pending actions. To apply this amendment retroactively, when the legislature clearly failed to contemplate its effect on the defendant's pending action, would unjustly abrogate the defendant's vested rights. We conclude that the trial court did not improperly refuse to apply P.A. 93-130 retroactively.

V

The plaintiff and the Masottas next claim that TILA does not negate the requirement of "tender back" to rescind a transaction. They argue that in order for the defendant to rescind the mortgage in question, she must restore the plaintiff to his position prior to entering into the loan agreement. The plaintiff and the Masottas argue that the defendant's failure to restore the plaintiff to the status quo rendered the defendant's attempt at rescission ineffective. We disagree.

The following additional facts found by the trial court are relevant to our resolution of this issue. In the July, 1990 and July, 1991 mortgage loan transactions, the plaintiff charged the defendant fees of $20 and $15, respectively, for the recording of the future assignments of the mortgage. The plaintiff failed to include as finance charges the amounts attributed to the future assignment recording fees. As a result of failing to include the assignment recording fees in the finance charges, the plaintiff underdisclosed the amount of the finance charges by a total of $35, thereby violating TILA, 15 U.S.C. § 1638 (a) (3).[12] On June 4, 1993, the defendant, in writing, rescinded the mortgage transaction pursuant to 15 U.S.C. § 1635 (a) and (f).[13] The plaintiff did not accept the defendant's rescission. The plaintiff's failure to acknowledge the rescission or to take proper actions after receipt of the notice of rescission within the twenty day period allowed by statute, terminated its security interest and prevented the mortgage from being foreclosed.

Title 15 of the United States Code, § 1635 (a), provides in pertinent part that "the obligor shall have the right to rescind the transaction until . . . the delivery of the

[12] The plaintiff does not challenge the trial court's finding that the plaintiff violated TILA.

[13] Title 15 of the United States Code, § 1635 (f), provides: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later."

information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter . . . by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. . . ." After an obligor elects to exercise the right to rescind, the effect of that decision and the subsequent exchange of property is governed by § 1635 (b), which provides: "When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. *Upon the performance of the creditor's obligations under this section,* the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. . . . The procedures prescribed by this subsection shall apply except when otherwise ordered by a court." (Emphasis added.)

"The sequence of rescission and tender set forth in § 1635 (b) is a reordering of the common law rules governing rescission. Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. [17A Am. Jur. 2d, Contracts § 590 (1991)]. Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in

replevin or assumpsit to insure that the non-rescinding party will restore him to the position that he was in prior to entering into the agreement, i.e., return earnest money or monthly payments and void all security interests. Id., [§ 604]." *Williams* v. *Homestake Mortgage Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992). "Under Connecticut law, as a condition precedent to rescission, the parties to a contract must be restored to their original position as nearly as possible." *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 113, 520 A.2d 162 (1987). "Under § 1635 (b), however, all that the [obligor] need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded . . . ." *Williams* v. *Homestake Mortgage Co.*, supra, 1140; *Aquino* v. *Public Finance Consumer Discount Co.*, 606 F. Sup. 504, 507–508 (E.D. Pa. 1985).[14]

We conclude that the trial court properly interpreted and applied 15 U.S.C. § 1635 (a) and (b). The tender of property is not required by § 1635 (b) as a condition preceding rescission. The notice given by the defendant properly rescinded the transaction. The failure of the plaintiff to accept the valid rescission by the defendant nullified the plaintiff's security interest. Because the

[14] Other courts, when faced with the similar situation of a violation of the federal TILA, a debtor properly rescinding pursuant to § 1635 (b) and a nonresponding creditor, have responded similarly to the trial court in this case. Those courts have excused the debtor from repayment of any outstanding loan balance. *Gill* v. *Mid-Penn Consumer Discount Co.*, 671 F. Sup. 1021 (E.D. Pa. 1987), aff'd, 853 F.2d 917 (3d Cir. 1988); *In re Gurst*, 79 B.R. 969 (E.D. Pa. 1987); see *In re Michel*, 140 B.R. 92 (E.D. Pa. 1992). In *Gill* v. *Mid-Penn Consumer Discount Co.*, supra, 1026, the court found that "15 U.S.C. § 1635 (b) provides that an obligation of the consumer to tender property received from the creditor arises only if the creditor appropriately reacts to the rescission request by satisfying its security interests within 20 days. The creditor's failure to comply with such a valid rescission request obviates the consumer's obligation." In *In re Michel*, supra, 101, the court did not eliminate the debtors' indebtedness, but acknowledged that § 1635 (b) "provide[s] [the court] with [such] statutory authority . . . where creditors have tried to deceive or cheat the consumer."

plaintiff's security interest became void, it was barred from foreclosing on the mortgage. The trial court correctly concluded that TILA does not require tender back in order effectively to rescind the mortgage.

## VI

The plaintiff and the Masottas claim finally that the trial court improperly awarded attorney's fees to the defendant because it failed to hold an evidentiary hearing. The trial court determined that the plaintiff violated CUTPA by engaging in unfair, unethical, oppressive, and unscrupulous conduct. Because General Statutes § 42-110g (d) expressly permits the court to award attorney's fees,[15] the defendant clearly is entitled to such fees. The plaintiff and the Masottas argue, however, that the trial court's award does not have an evidentiary basis. We agree.

Our Supreme Court has held that it is an "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing." *Barco Auto Leasing Corp.* v. *House,* supra, 202 Conn. 121, quoting *Hartford Electric Light Co.* v. *Tucker,* 183 Conn. 85, 91, 438 A.2d 828 (1981). In *Barco Auto Leasing Corp.* v. *House,* supra, 121, the defendant's attorneys submitted affidavits detailing the time spent on the case, the tasks performed and the fees charged. The plaintiff's attorney objected to the admission of one of the affidavits and was overruled by the trial court, which allowed the affidavits to be filed but did not admit them as evidence. Id. Our Supreme Court concluded that "[t]he parties . . . were given no opportunity to address this issue at trial. . . . [T]he

---

[15] General Statutes § 42-110g (d) provides in pertinent part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

plaintiff was denied the undisputed right to litigate fully the reasonableness of the attorney's fees sought by the defendants' counsel"; id.; and remanded the case fully to address the issue at a further hearing.[16]

The defendant raised the issue of an evidentiary hearing at trial. In response to this, the trial court decided to postpone such a hearing until after a decision in the case was made.[17] Although the plaintiff, the Masottas and the defendant submitted sworn affidavits of attorney's fees to the trial court, no opportunity was ever presented for either side to litigate that issue. The issue of attorney's fees must be fully addressed at a further hearing.

The judgment is reversed only as to the award of attorney's fees and the case is remanded for further proceedings.

In this opinion the other judges concurred.

---

[16] We note that *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310–11, 476 A.2d 572 (1984), and *Guaranty Bank & Trust Co.* v. *Dowling*, 4 Conn. App. 376, 386, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 55 (1985), may hold otherwise. We have followed *Barco Auto Leasing Corp.* v. *House*, supra, 202 Conn. 121, because it is the later case on the subject, it is also a CUTPA case and the facts of the present case most nearly approximate those of *Barco*.

[17] The trial court stated: "Well, I think the fairest thing to do is to wait until we get a decision, except for the question of attorney's fees, either way on both sides and then I'll give you an opportunity, both of you, to come in with evidence on the question of attorney's fees."