Ilene LIEBERMAN, on behalf of herself and all others similarly situated, Plaintiffs,

v.

EMIGRANT MORTGAGE COMPANY, Defendant.

Civil Action No. 3:05–cv–1166 (JCH).

United States District Court, D. Connecticut.

June 2, 2006.

---

Stephen James Curley, Law Offices of Stephen J. Curley, Stamford, CT, for Plaintiff.

Jeffrey M. Knickerbocker, Leslee B. Hill, Robert A. Ziegler, Law Office of Rob-

ert A. Ziegler, Plainville, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. NO. 14]

HALL, District Judge.

The plaintiff, Ilene Lieberman, who is a resident of Connecticut, brings this putative class action for declaratory relief, breach of contract, unjust enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110 *et seq.*, against the defendant, Emigrant Mortgage Company, Inc. ("Emigrant Mortgage"), a corporation with its principal place of business in New York. The suit concerns a loan agreement that the plaintiff had entered into with Emigrant Mortgage. Emigrant Mortgage removed this action from the Connecticut Superior Court for the Judicial District of Stamford, pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

Emigrant Mortgage has moved to dismiss Lieberman's action pursuant to Fed. R.Civ.P. 12(b)(6), arguing, *inter alia,* that Lieberman's complaint fails to state claims upon which relief can be granted. For the following reasons, Emigrant Mortgage's motion to dismiss is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[1]

Lieberman is a resident of Weston, Connecticut. In 2003, Lieberman contracted with Emigrant Mortgage for a $750,000.00 loan at a variable rate of interest, which was initially set at 5.875% per annum. The loan was secured by a mortgage on a residence owned by Lieberman. Contained within the loan agreement and attached riders were provisions providing that, in the case of a default, the interest rate on the loan would increase to 18% and Emigrant Mortgage would have the right to accelerate the loan.[2] Lieberman alleges that she is not an attorney and is not "familiar with the intricacies of housing finance under Connecticut law." Class Action Complaint [Doc. No. 1], ¶ 23. She also alleges that all documents pertaining to the loan were prepared by Emigrant Mortgage and that Emigrant Mortgage never indicated any willingness to negotiate or amend the terms and conditions of the loan agreement.

Payment on the loan commenced in October 2003, and some time after that date Lieberman became unable to make regular monthly payments on the loan. In May 2004, Emigrant Mortgage notified Lieberman, by letter, that it was accelerating the payment schedule of the loan and imposing the default interest rate. In August 2004, Emigrant Mortgage brought an action in Connecticut against Lieberman to foreclose the mortgage and to collect on the loan. Lieberman alleges that, "under the duress" of the 2004 Action, she paid Emigrant Mortgage $65,497.50 in default interest, late charges, attorney's fees and other costs. *Id.* at ¶ 27.

In November 2004, Emigrant Mortgage again notified Lieberman that it was accelerating the payment schedule for the loan

---

**1.** The court takes the facts alleged in plaintiffs' complaint as true, as it must, and draws all inferences in plaintiffs' favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

**2.** The loan agreement is incorporated into Lieberman's complaint, and it is attached as Exhibit C to Emigrant Mortgage's motion to dismiss. Class Action Complaint [Doc. No. 1], ¶ 20; Mem. of Law in Supp. of Def's Mot. to Dismiss [Doc. No. 15], Ex. C.

agreement and imposing the default interest rate. In February 2005, Emigrant Mortgage brought another action in Connecticut to foreclosure on the mortgage and collect on the loan. Lieberman alleges that "under the duress" of the 2005 action, she paid Emigrant Mortgage $93,607.32 in default interest, late charges, attorney's fees, and other costs.

Lieberman asserts that the terms of the loan agreement were usurious, unconscionable, and constituted an unenforceable penalty for breach of contract. On the basis of these theories, Lieberman asserts claims for breach of contract, breach of implied contract, unjust enrichment, breach of the duty of good faith and fair dealing, and a violation of CUTPA. Lieberman also asserts these claims on behalf of all persons in Connecticut who executed promissory notes with Emigrant Mortgage that contained the same default interest rider at issue here. Emigrant Mortgage moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Lieberman's suit, arguing that she has failed to state claims upon which relief can be granted.

## II. LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Reed v. Town of Branford,* 949 F.Supp. 87, 89 (D.Conn. 1996). In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

"In considering a motion to dismiss ... a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference ... [and review all allegations] in the light most favorable to the non-moving party." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

## III. DISCUSSION

### A. The Plaintiff's Legal Theories

Lieberman's individual causes of actions are each premised on her theories that the loan agreement was defective because its terms were usurious, unconscionable, and constituted an unenforceable penalty for breach. The court will consider these theories in turn.

#### 1. *Usury*

Lieberman asserts that the terms of the default interest rider are usurious under Conn.Gen.Stat. § 37–4. The court previously addressed whether a default interest rider identical to the one in the instant case was violative of section 37–4 in *Pierce v. Emigrant Mortgage Co.,* 304CV1767JCH, 2005 WL 2406007 (D.Conn. Sept.29, 2005). In *Pierce,* the court found that, while there was no decisive Connecticut case law on the issue, the weight of authority from other jurisdictions, as well as the analysis in *Scientific*

*Products v. Cyto Medical Laboratory, Inc.,* 457 F.Supp. 1373 (D.Conn.1978), indicated that, under Connecticut law, section 37–4 does not apply to the post-default interest rates at issue. 2005 WL 2406007, at *3. In reaching this conclusion, the court considered and discussed the cases that Lieberman cites for support of her position that the default interest rider that was incorporated into her loan agreement violated section 37–4. *Id.* at *3–4. In particular, the court found that the holding of the Montanta Supreme Court in *Scarr v. Boyer,* 250 Mont. 248, 818 P.2d 381 (1991) was inapplicable to the Connecticut law at issue because of the disparate language of Connecticut and Montana's usury statutes. *Id.* at *4.

■ Therefore, the court finds that the default interest rider at issue in the instant case was not violative of Conn.Gen.Stat. § 37–4 for the reasons discussed in *Pierce.* Emigrant Mortgage's motion to dismiss is GRANTED to the extent that Lieberman's complaint asserts claims on the basis of Conn.Gen.Stat. § 37–4.

### 2. *Unconscionability*

■ Lieberman also asserts the terms of the loan agreement were unconscionable.

The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. As Official Comment 1 to § 2–302 of the Uniform Commercial Code suggests, the basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses

involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Unconscionability is determined on a case-by-case basis, taking into account all of the relevant facts and circumstances.

*Monetary Funding Group, Inc. v. Pluchino,* 87 Conn.App. 401, 411–412, 867 A.2d 841 (Conn.App.2005) (quoting *Family Financial Services, Inc. v. Spencer,* 41 Conn. App. 754, 762–63, 677 A.2d 479 (1996)); *see also Cheshire Mortgage Service, Inc. v. Montes,* 223 Conn. 80, 87–89, 612 A.2d 1130 (1992). "Before a court strikes down as unconscionable the terms of a note that the legislature has deemed not to be illegal ... the court should permit a factual showing of the circumstances that led to the inclusion of the challenged terms in the note or mortgage." *Hamm v. Taylor,* 180 Conn. 491, 494–495, 429 A.2d 946 (Conn. 1980) (internal citation omitted). "The financial circumstances of the borrower, the increased risk associated with a second mortgage, and the income-producing capacity of the mortgaged property are some of the questions of fact that might appropriately be explored to shed light on whether a designated interest rate is or is not unconscionable." *Id.*

Emigrant Mortgage makes several arguments in support of its position that Lieberman's complaint fails to state a claim for relief on the basis of unconscionability. First, Emigrant Mortgage argues that Lieberman has failed to include in her complaint factual allegations of the type that have been found by courts in Connecticut to be relevant to a determination of unconscionability, such as the facts discussed by the court in *Family Financial Services v. Spencer,* 41 Conn.App. 754, 763, 677 A.2d 479 (Conn.App.1996). However, under Rule 8, specific factual pleading of the type Emigrant Mortgage suggests is

not required. *See Swierkiewicz*, 534 U.S. at 511, 122 S.Ct. 992.

██ Second, Emigrant Mortgage invites the court to examine facts and documents related to the loan agreement at issue that were not attached to, or incorporated into, Lieberman's complaint. Emigrant Mortgage asserts that this evidence demonstrates that Lieberman cannot state a claim for relief. The court notes that, on a motion to dismiss pursuant to Rule 12(b)(6), it may consider documents external to a complaint where the complaint "relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (internal quotation marks omitted). However, even if the court were to consider the documents and facts submitted by Emigrant Mortgage, the court is not in a position, at this state of the litigation, to determine that "it appears beyond doubt" that Lieberman can prove no set of facts which would entitle her to relief.[3] *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

Finally, Emigrant Mortgage cites, in support of its motion to dismiss, to several cases in other contexts in which an interest rate similar or higher to the one imposed by the default interest rider has been found to be enforceable. *See, e.g., Iamartino v. Avallone*, 2 Conn.App. 119, 477

A.2d 124 (1984) (finding interest rate for a commercial loan of 37% or 45% not unconscionable); *Ferrigno v. Cromwell Assocs.*, 244 Conn. 189, 708 A.2d 1371 (1998) (finding 20% interest rate on a mortgage not violative of Connecticut's usury law). Several of the cases cited by the defendant, such as *Ferrigno*, do not address whether a particular rate is unconscionable, and are thus not relevant to the issue at hand. Moreover, unconscionability is not merely a function of a particular interest rate, but rests on the factors described above. *See Hamm*, 180 Conn. at 495, 429 A.2d 946 ("Whether interest rates are unconscionable is a question that should not be decided simply by judicial surmise about prevailing prime interest rates."); *see also Iamartino*, 2 Conn.App. at 125, 477 A.2d 124 (applying multi-factor test to determine whether an interest rate was unconscionable).

Because Emigrant Mortgage has not demonstrated that Lieberman can prove no set of facts which could demonstrate that the terms of the loan agreement were unconscionable, its motion to dismiss Lieberman's assertions regarding unconscionability is DENIED.

### 3. *Unenforceable Penalty* [4]

██ Lieberman asserts that the terms of the loan agreement constitute an

---

**3.** In *Bernard–Thomas Building Systems, LLC v. The Weitz Company, LLC,* 3:04CV810CFD, 2005 WL 734175 (D.Conn. March 28, 2005), which Emigrant Mortgage cites for support, the district court found that a contract was not unconscionable in certain respects where unconscionability was raised as a defense to a motion to dismiss on the basis that a claim was contractually barred. Id. at *1–2. In other words, unlike here, the unconscionability assertions in *Bernard–Thomas* were made in response to a motion to dismiss.

**4.** Lieberman argues that Emigrant Mortgage should be estopped from arguing that the

default interest provision is not an unenforceable penalty because, in the *Pierce* action, it had described the 18% default interest provision in that case as a penalty for default. Even if Lieberman were able to demonstrate the prerequisites for a claim of judicial estoppel, *see AXA Marine & Aviation v. Seajet Indus.*, 84 F.3d 622, 628 (2d Cir.1996), such an "admission" by Emigrant Mortgage would nevertheless not determine whether the default interest provision was, in fact, an unenforceable penalty. *See American Car Rental, Inc. v. Comm'r of Consumer Protection*, 273 Conn. 296, 307, 869 A.2d 1198 (2005) ("In determining whether any particular provision an

unenforceable penalty. "It is settled law that a contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of the contract is enforceable if it satisfies certain conditions." *Velenchik v. First Union National Bank*, CV000372515, 2003 WL 21152967, at *3 (Conn.Super. May 7, 2003) (quoting *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.*, 153 Conn. 681, 686, 220 A.2d 263 (1966)).

> " [S]uch a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract."

*American Car Rental, Inc. v. Comm'r of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005).

Emigrant Mortgage has cited several cases from other contexts to support its contention that the 18% interest rate in the default interest rider was not an unenforceable penalty. In *National Loan Investors L.P. v. Town of Orange*, 204 F.3d 407, 412 (2d Cir.2000), the Second Circuit found that an assessment of 18% charged against the FDIC by a public authority in the case of a default was not a penalty and did not violate 12 U.S.C. § 1825(b)(3). In

*Town of Monroe v. 837 Main Street Corp.*, 45 Conn.Supp. 283, 286, 712 A.2d 996 (Conn.Super.1997), a Connecticut court confronted with the same issue reached the same conclusion. In *S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini*, 127 F.Supp.2d 287, 293 (D.Conn.2000) (Hall, J.), the district court found that subject matter jurisdiction was lacking for a claim which alleged that an 18% charge was a penalty and thus subject to the Tax Injunction Act.

These cases, all of which involve assessments by municipalities against various entities, are inapposite to the instant case. The court notes that it is arguable that a default interest provision in a mortgage may be different in kind than a liquidated damages clause in other contracts. However, courts in other jurisdictions have analyzed default interest provisions in mortgages under factors similar to those in Connecticut law. *See MetLife Capital Financial Corp. v. Washington Avenue Assocs. L.P.*, 159 N.J. 484, 493, 732 A.2d 493 (1999); *Fleet Bank of Massachusetts, N.A. v. One–O–Six Realty*, Inc., 94–3392–G, 1995 WL 389862, at *2 (Mass.Super. Jan.17, 1995). In addition, in *FDIC v. Napert–Boyer Partnership*, 40 Conn.App. 434, 443, 671 A.2d 1303 (Conn.App.1996), the Connecticut Appellate Court found a "late charge" on a loan, which was assessed in addition to a default interest rate, would constitute a penalty if it was assessed after a demand for payment in full following a default.

■ The court therefore cannot conclude, on the basis of the cases cited by Emigrant Mortgage in support of its position, that it appears beyond doubt that Lieberman can not prove that the interest

---

is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase 'liquidated damages' or 'penalty' is

used. Rather, that which is determinative of the question is the intention of the parties to the contract.").

charges allegedly assessed against her were unenforceable penalties under Connecticut law. Accordingly, Emigrant's motion to dismiss Lieberman's complaint on this basis is DENIED.

## B. The Plaintiff's Specific Claims

On the basis of the legal theories discussed above, Lieberman asserts several causes of action. The court will discuss the issues raised by Emigrant Mortgage with regard to Lieberman's causes of actions in turn.

### 1. Declaratory and Equitable Relief

In her first cause of action, Lieberman seek a declaration that the loan agreement was void *ab initio*, requests that the court order Emigrant Mortgage to refund the default interest it had collected, and requests that the court reform the loan agreement to remove the default interest rider.

Emigrant Mortgage asserts that Lieberman's claim for declaratory action should be denied because Lieberman cannot show that the loan agreement is void. However, given that Lieberman may be able to prove that the loan agreement is void due to unconscionability or because it contains an unenforceable penalty, Emigrant Mortgage's motion to dismiss is DENIED.

■ Emigrant Mortgage also argues that Lieberman is not entitled to reformation of the contract as reformation is only available as a remedy in cases of mutual mistake or fraud. "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties. Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result of

mutual mistake." *Lopinto v. Haines,* 185 Conn. 527, 532, 441 A.2d 151 (1981); *see also Harlach v. Metropolitan Prop. and Liabl. Ins. Co.,* 221 Conn. 185, 191, 602 A.2d 1007 (1992) (reversing reformation where no elements of mistake, fraud, or inequitable conduct coupled with mistake). There are no allegations of fraud or mistake in the instant case. Lieberman, citing *Hamm,* argues that reformation is nonetheless an available remedy here under the court's inherent equitable powers. In *Hamm,* however, the Connecticut Supreme Court affirmed a trial court's's discretion to reduce the amount of indebtedness in the course of a foreclosure proceeding; it did not suggest that its jurisprudence regarding reformation was otherwise altered. 180 Conn. at 497, 429 A.2d 946; *see also Homecoming Financial Network, Inc. v. McDermott,* CV010453370s, 2002 WL 652442, at *5 (Conn.Super. March 21, 2002) (rejecting argument that *Hamm* overrode the doctrine of reformation developed in *Lopinto* and *Harlach).*

Lieberman also points out that the loan agreement itself provides for a reduction in any interest charge that is found to be in excess of any limit imposed by law. See Def's Memo. of Law. in Supp. of Mot. to Dismiss, Ex. C, ¶ 6. This contractual "remedy" is not "reformation" in the traditional sense, as it is expressly provided for in the contract between the parties, and thus need not be enforced through an action for reformation, but merely an action to enforce the contract.

Accordingly, Emigrant Mortgage's motion to dismiss Lieberman's cause of action for reformation is GRANTED.

### 2. Breach of Contract

In the Second Count of her complaint, Lieberman asserts that Emigrant Mort-

gage breached the provision of the loan agreement providing that Emigrant Mortgage would return to Lieberman any charges which exceeded any limits set by law. *Id.* Emigrant Mortgage argues that Lieberman cannot prove that the loan agreement was breached because the amount charged under the loan agreement did not exceed any limit set by law. For the reasons discussed above, however, Lieberman may be able to prove that the amounts charged under the loan agreements exceeded legal limits due to unconscionability or because the default interest payments constituted unenforceable penalties. Therefore, Emigrant Mortgage's motion to dismiss the Second Count of Lieberman's complaint is DENIED.

### 3. Breach of Implied Contract and Unjust Enrichment

■■■ In the Third and Fourth Counts of her complaint, Lieberman asserts causes of action for breach of implied contract and unjust enrichment, alleging that she and Emigrant Mortgage implicitly agreed that she would not be charged an excessive or unconscionable rate of interest. "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties.... The test is whether the conduct and acts of the parties show an agreement." *Brighenti v. New Britain Shirt Corp.*, 167 Conn. 403, 406, 356 A.2d 181 (1974)(internal citations omitted). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Gagne v. Vaccaro*, 255 Conn. 390, 408, 766 A.2d 416 (2001) (quoting *Franks v. Lockwood*, 146 Conn. 273, 278, 150 A.2d 215 (1959)). The elements of the claim are that, "(1) the defendant benefit-

ted; (2) the defendant unjustly failed to pay the plaintiff for the benefits; and (3) the failure of payment was to the plaintiff's detriment." *Kull v. Davidoff of Geneva*, No. 01–CIV–4821, 2004 WL 1418088, at *15 (S.D.N.Y. June 23, 2004) (citing *Gagne*, 255 Conn. at 409, 766 A.2d 416).

■■■ Emigrant Mortgage argues that Lieberman cannot state a claim for breach of implied contract or unjust enrichment because the interest charges were not excessive or unconscionable, and because there was an express contract between the parties that precludes recovery on the basis of implied obligations. "Parties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations. Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment." *Polverari v. Peatt*, 29 Conn.App. 191, 199, 614 A.2d 484 (Conn.App.1992) (internal quotation marks and citations omitted).

■■■ For the reasons discussed above, Lieberman's allegations are sufficient to state a claim that loan agreement was unconscionable or contained an unenforceable penalty. Lieberman also argues that, in the event that the loan agreement is declared to be unenforceable, an implied contract may be found to exist. If the loan agreement were to be declared unenforceable, Lieberman, on the basis of the allegations in her complaint, may be able to show that the conduct and acts of the parties demonstrated that some agreement existed between the parties, and that the agreement was breached. *See United Steel, Inc. v. Haynes Const. Co.*, CV054003498, 2006 WL 164812, at *3 (Conn.Super. Jan.4, 2006) (finding that claims for breach of implied contract and unjust enrichment could be pleaded as alternative claims where an remedy under a

contract may exist). Accordingly, Emigrant Mortgage's motion to dismiss the Third and Fourth Counts of Lieberman's complaint is DENIED.

### 4. *Breach of Implied Duty of Good Faith and Fair Dealing*

 In her Fifth Count, Lieberman asserts a cause of action for the breach of the implied duty of good faith and fair dealing. "To constitute a breach of that duty, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith means more than mere negligence; it involves a dishonest purpose." *Collins v. Anthem Health Plans, Inc.*, 275 Conn. 309, 333–34, 880 A.2d 106 (2005) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382 (2004)). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 224 Conn. 231, 237, 618 A.2d 501 (1992).

 Emigrant Mortgage argues that Lieberman's allegations cannot support a claim that it acted in bad faith. Lieberman alleges that Emigrant Mortgage acted in bad faith when it demanded payment of unconscionable amounts of interest "as soon as" she began to fail to make payment on her loan, thus ensuring that she would not be able to cure any default. She also alleges that Emigrant Mortgage acted in bad faith by demanding that she pay to it exorbitant and unconscionable sums in exchange for withdrawal of its 2005 action against her. She argues that these actions, coupled with Emigrant Mortgage's

failure to comply with its contractual obligation not to charge any interest in excess of legal limits, can sustain a finding of bad faith. For purposes of this motion to dismiss, Lieberman's allegations are sufficient to state a claim for the breach of the covenant of good faith and fair dealing. Accordingly, Emigrant Mortgage's motion to dismiss is DENIED as to the Fifth Count of Lieberman's complaint.

### 5. *CUTPA Violation*

 The Sixth Count of Lieberman's complaint asserts a cause of action for violation of CUTPA. Conn. Gen.Stat. § 42–110b provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b. To determine whether an practice violates CUTPA, courts examine these factors: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Sanghavi v. Paul Revere Life Ins. Co.*, 214 Conn. 303, 311–312, 572 A.2d 307 (Conn.1990) (citations omitted). "[T]o be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an 'ascertainable loss' due to a CUTPA violation." *Collins*, 275 Conn. at 334–335, 880 A.2d 106.

 Emigrant Mortgage argues that Lieberman cannot sustain her CUTPA claim because she cannot show that Emigrant Mortgage's activities were immoral, unethical, unscrupulous, or offensive to public policy. However, CUTPA claims

have been sustained on the basis of the inclusion of unconscionable terms or unenforceable penalties within a contract. *See Am. Car Rental*, 273 Conn. at 306, 869 A.2d 1198 (finding that CUTPA violation was sustained because an unenforceable penalty violated public policy); *Monetary Funding Group, Inc. v. Pluchino*, 87 Conn.App. 401, 413, 867 A.2d 841 (Conn. App.2005) (finding CUTPA violation was sustained where party acted with unclean hands and engaged in an unconscionable transaction). Accordingly, Emigrant Mortgage's motion to dismiss the Sixth Count of Lieberman's complaint is DENIED.

## IV. Conclusion

For the foregoing reasons, the defendant's Motion to Dismiss [Dkt. No. 14] is hereby GRANTED as to the plaintiff's claims under Conn.Gen.Stat. 37–4, GRANTED as to the plaintiff's cause of action for reformation, and DENIED in all other respects.

**SO ORDERED.**